1

1           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
2                      NORTHERN DIVISION

3


4

    UNITED STATES OF AMERICA
5
            v.                          CRIMINAL CASE NO.
6                                           ELH-21-161

    MATTHEW K. WALSH,
7
            Defendant
8    _____/

9


10              (Review of Detention Order)
              Wednesday, August 25, 2021
11                 Baltimore, Maryland

12

Before:  Honorable Ellen L. Hollander, Judge
13


14


15  Appearances:

16        On Behalf of the Government:
           Judson T. Mihok, Esquire
17

18        On Behalf of the Defendant:
           James E. Crawford, Jr., Esquire
19

20

21

22  ----------------------------------------------------------------
              Reported By:
23         Mary M. Zajac, RPR, FCRR
         Fourth Floor, U.S. Courthouse
24          101 West Lombard Street
            Baltimore, Maryland 21201
25

1        (Proceedings at 2:32 p.m.)

2        MR. MIHOK:  I'd like to call the United States versus

3   Matthew K. Walsh.  It's assigned Criminal Number ELH-21-161.  For

4   the United States, Judson Mihok.  I'm joined by FBI Special Agent

5   Rachel Corn.  And the matter is on this afternoon for review of a

6   detention order.  Good afternoon.

7        THE COURT:  All right.  Thank you.  You may have a

8   seat.  People in the gallery may have a seat.

9        Counsel?

10       MR. CRAWFORD:  Judge, nice to see you.  James Crawford,

11  Junior, on behalf of Mr. Matthew Walsh, who is now sitting to my

12  right.

13       THE COURT:  All right.  Thank you.  You can have a seat

14  as well.

15       Just preliminarily, I know that everyone is masked.  No

16  one may remove a mask.  And those in the well of the court who

17  are speaking, if you're fully vaccinated and would like to remove

18  your mask, that's all right.  But otherwise, we ask that everyone

19  remain masked.

20       I think the reason is obvious.  But in case there's any

21  question, everyone, of course, is concerned about the surge in

22  cases, COVID-19 cases due to the Delta variant.  So this is our

23  precaution.  Otherwise, we would be resorting to having the

24  hearing via Zoom.  So have it in open court, we have to take

25  these safeguards.

1          Now, I do want to just say, counsel, I'm sorry for the

2     confusion as who was conducting the hearing.  I had thought on

3     the docket it was -- I know that Judge Coulson had the hearing in

4     May.  I know he issued an opinion in July.  But I didn't see a

5     hearing on that.  So I was confused, thinking that you wanted to

6     consider having Judge Coulson consider his original May ruling.

7     And that was why I made the suggestion that this could go back to

8     Judge Coulson.

9          MR. CRAWFORD:  I understand, Your Honor.

10          THE COURT:  So we are here on the request of the

11     defendant.  Essentially, it's an appeal from the ruling of Judge

12     Coulson, who denied reconsideration essentially of his original

13     detention order.  It's a de novo proceeding.

14          That said, I have reviewed all of the information

15     provided by counsel.  I also reviewed the medical records that

16     were submitted.  I didn't print them out because of the volume,

17     but I did look at them because I understand that at least one of

18     the issues concerns the defendant's physical health, as well as

19     mental health.

20          I just want to at least set the stage, if you will.

21     This is a case in which the defendant was indicted in May of this

22     year on multiple charges, alleging sexual exploitation of a

23     minor, coercion and enticement, and receipt of child pornography.

24          The first two counts that have been charged carry a

25     15-year mandatory minimum period of incarceration if he's

4

1    convicted, and a 30-year maximum.  There is a 10-year mandatory

2    minimum period for Counts Three and Four and a 5-year mandatory

3    minimum for Counts Five and Six.

4              And I wanted to reference this because under 18 USC

5    Section 3142(e)(3)(E) the counts or charges carry a presumption

6    in favor of detention.  And I thought that it was important to

7    point that out.

8              Judge Coulson's memorandum and order in which he

9    reconsidered, if you will, but didn't change his original ruling

10   from his detention hearing on May 25, his memorandum and order is

11   at ECF 23.  And I also have a Pretrial Services report from Ms.

12   Martin that was prepared on May 14 of 2021.  Ms. Martin is here.

13   So I've looked at that as well.

14             The medical records were filed under seal.  And I have

15   looked at those, as I said.  I'm going to make reference to one

16   page when it's appropriate.  But I printed a few of the pages

17   just because they might be relevant.

18             I want to just, with that background, also make note of

19   the fact that, as I've already indicated, this is a de novo

20   proceeding and the Court's task is to determine whether there are

21   conditions of release that will reasonably assure the safety of

22   any other person in the community.

23             It isn't my understanding that -- and correct me if I'm

24   wrong -- the issue of risk of flight, was there a concern as to

25   that, Mr. Mihok, from the government's perspective?

1          MR. MIHOK:  We focused our arguments on the danger,

2     Your Honor.

3          THE COURT:  That's what I thought and that's why I was

4     asking.  So, my understanding is that in reviewing the issue, the

5     Court may use evidence that was previously presented.  Also,

6     though, as I said, if there's additional evidence, because it's

7     de novo, I would consider that.  And the Court must make an

8     independent determination.

9          This case is rooted, of course, in the Bail Reform Act.

10    That's 18 USC Section 3141, et seq.

11         At this stage, because it's de novo, the question I

12    have would be is it the government's burden to prove and, if so,

13    by what standard?  Or is it because it's a motion, basically an

14    appeal, whose burden would it be?

15         MR. MIHOK:  Well, Your Honor, I think the burden would

16    remain the same.  We would have to prove that the defendant posed

17    a danger by clear and convincing evidence.  But since it's the

18    defendant's motion, I just think procedurally the defense goes

19    first because they are the ones who are challenging the existing

20    detention order.

21         THE COURT:  But ultimately the government has to

22    demonstrate by clear and convincing evidence that he is a danger

23    to the community and no conditions would reasonably protect the

24    community?

25         MR. MIHOK:  Correct.

1          THE COURT:  Okay.  And I gather that there are

2     interested parties present.  And my question to you, Mr. Mihok,

3     is what is the relevance of the concerns of the people who wrote

4     to you, or whose concerns you related to the Court in terms of

5     this isn't a sentencing proceeding, for example?

6          MR. MIHOK:  Well --

7          THE COURT:  I don't mean any disrespect but many of

8     them are very angry or scared or both.  And is that relevant to

9     the Court's consideration?

10          MR. MIHOK:  100%, Your Honor.  Under 3142(g), (g)(4),

11     one of the factors that are considered by the Court are the

12     nature and seriousness of the danger to any person or the

13     community that would be posed by --

14          THE COURT:  Oh, absolutely.  I have no quarrel with

15     that.  These were their personal concerns.  To me, if you have to

16     prove by clear and convincing evidence that he's a danger, it's

17     not because they prefer that he remain incarcerated.

18          MR. MIHOK:  Well, they're obviously in fear.  And I'll

19     get to this in my argument.  But their concerns and their fears

20     are absolutely relevant to this Court's determination as to

21     whether or not the defendant poses a risk of danger to those very

22     same victims, who he appeared to target and many of whom are in

23     the Baltimore City and the Baltimore County area, in this

24     geographic area where he proposes to go reside.

25          THE COURT:  So, I have to consider, according to

7

1    3142(g), the nature and circumstances of the offense, including

2    whether it's a crime of violence, whether it includes a minor

3    victim, which we've discussed, the weight of the evidence, the

4    history and characteristics of the person, including physical and

5    mental condition, family ties, employment, financial resources,

6    length of residence in the community, community ties, past

7    conduct, history relating to drug or alcohol abuse, criminal

8    history, and record concerning appearance at court proceedings,

9    and whether he was on probation or parole at the time, the nature

10   and seriousness of the danger to any person or the community that

11   would be posed by release, and --

12              MR. MIHOK:  And I would also add, Your Honor --

13              THE COURT:  And those are the factors, right?

14              MR. MIHOK:  Right.  And under 18 US Code Section 3771,

15   the Victim Rights Act --

16              THE COURT:  Well, that is my question.  Does that --

17              MR. MIHOK:  That applies --

18              THE COURT:  -- come into play at this stage?

19              MR. MIHOK:  Sure.

20              THE COURT:  As opposed to sentencing, where I --

21              MR. MIHOK:  100%.  At every stage of the proceedings,

22   they have a right to be, victims and the parents of minor

23   victims, guardians of victims, have a right to be present and a

24   right to be heard, including at the detention hearing stage.

25              THE COURT:  So any victim who's here, obviously that

1    right is well respected.  The question I had is what is the

2    interplay between their personal interest or desires and those

3    factors that I just read out loud?

4             MR. MIHOK:  Right.  And so, again, I'll toggle back to

5    they have -- we're here, we're dealing with minor victims, boys

6    of tender years, teenage boys who were specifically targeted by

7    the defendant.  And so their credible concerns and claims of fear

8    and their, what they've clearly relayed to the Court, both in

9    summaries and in other statements that I'm going to be reading to

10   the Court, that those are clearly relevant to this Court's

11   determination as to whether or not the defendant poses a risk of

12   danger if he was released to this same exact community where he

13   targeted these boys.

14            THE COURT:  So I tried to look for cases on this.  I

15   didn't find anything.  But my question was -- I read the statute.

16   Those were the factors.  The interplay seemed to be -- I have to

17   make the determination based on those factors.  That's my

18   understanding.

19            MR. MIHOK:  Right.  Under 3142, 3142(g), Your Honor,

20   yes.

21            THE COURT:  Right.  Okay.  All right.  Well, I have

22   read what people wrote.  But the question was to what extent may

23   I consider the personal preferences of any family member or

24   victim?

25            MR. MIHOK:  Well, maybe that will be -- if we could

1   just roll through the hearing, maybe that will make better sense.

2   Rather than plucking that out and taking it out of context,

3   perhaps leaving it in context --

4              THE COURT:  Okay.

5              MR. MIHOK:  -- in my comments and argument.

6              THE COURT:  Okay.  Sure.  Who's going first, then?

7              MR. MIHOK:  Mr. Crawford.

8              MR. CRAWFORD:  Judge, if I could just briefly be heard

9   on that issue, just maybe it will help us along as to as the

10  hearing goes along, sharing my position on that.

11             Judge, absolutely, any witness or anyone who wants to

12  testify about the nature of the crime or what actually happened

13  to them or didn't happen to them is relevant.  But relevant is a

14  wide term, a big term here.

15             My argument would be, and I would ask, and I'm going to

16  object at the specific time, that any victim who wants to testify

17  about the nature of the crime and what it means to them

18  personally is not relevant unless they can show that it meets the

19  criteria as far as how it could pose a danger to the safety of

20  others.  And I think that's what the Court was asking as far as

21  the interplay between their testimony and that.

22             And quite simply, I believe that, for example, if a

23  witness was to say, say that I'm mad, I don't want him out, I

24  feel safer when he's in jail, well, that's not really going to be

25  a relevant factor because it doesn't go into the play, the

1    interplay as far as the statute's concerned.

2          However, in fairness, if there's some sort of

3    correlation or statement made, something very specific that would

4    lead this Court to believe that it's relevant to the general

5    safety of the public or anyone in particular, then that's

6    something that could be taken into consideration.  Otherwise, I'm

7    going to ask the Court to not allow any type of testimony.

8          I think what the government's going to do here today is

9    put on information about how sad or how bad the information, the

10   crime was or wasn't.  Now, when I say that that may be relevant,

11   it's not specifically relevant as to whether or not it poses a

12   danger to or safety of others.

13         So I do agree with counsel that I think even though

14   this is a, this is a de novo hearing, and although we're talking

15   about detention, I also agree with the Court that there is a

16   burden, at least an initial burden, on defense as far as showing

17   why he should be released.  But I think in very simple terms,

18   sort of the Attia case basically laid out and said defense must

19   demonstrate by clear and convincing evidence that he's not likely

20   to flee or pose a danger to society or safety of others.  And

21   clearly --

22         THE COURT:  Well, not to cut you off, but 3771(a)(4)

23   does say a crime victim has the right to be reasonably heard at

24   any public proceeding in the district court involving release.

25         MR. CRAWFORD:  Absolutely.  Maybe I can clarify.

1          THE COURT:  So they would have the right to be heard.

2     But the question is whether whatever might be said is pertinent

3     to those factors.

4          MR. CRAWFORD:  Absolutely.

5          THE COURT:  That was the reason I asked the question.

6          MR. CRAWFORD:  And that's exactly what I was

7     addressing.  Absolutely.

8          THE COURT:  For example, if a crime victim had been

9     contacted --

10          MR. CRAWFORD:  Right.

11          THE COURT:  -- by a defendant -- not this case, I'm

12     just using that as a hypothetical -- and threatened --

13          MR. CRAWFORD:  Right.

14          THE COURT:  -- and that would be relevant to release.

15          MR. CRAWFORD:  Absolutely.  Absolutely.  But not simply

16     I'm angry or I feel, although I'm not diminishing that.

17          THE COURT:  And I'm not diminishing it.

18          MR. CRAWFORD:  I'm just saying --

19          THE COURT:  Please, not to misunderstand anything I've

20     asked because I think that's what the law requires me to ask.

21          MR. CRAWFORD:  Absolutely.  And that's all I have with

22     regard to that.

23          THE COURT:  Okay.  Well, you have the burden -- well,

24     the government has the ultimate burden, but you have the burden

25     of going forward.

1          MR. CRAWFORD:  Yes.

2          THE COURT:  So why don't you get started?

3          MR. CRAWFORD:  Absolutely, Judge.  I'd like to call Mr.

4     Walsh to the stand.

5          THE COURT:  Now, I think before you do that, he needs

6     to be advised.

7          MR. CRAWFORD:  I will advise him.  It's my position,

8     Your Honor, that the scope of what we're talking about here is

9     relevance.  In other words, what I am going to ask him about is

10    purely for this hearing and this hearing only.  I don't think

11    that, it's my position that doesn't give the government the

12    opportunity to cross examine regarding the nature or the actual

13    specific crimes themselves.  We are talking about the scope as

14    far as --

15         THE COURT:  Well, I don't know.  I've never had a

16    detention hearing where the defendant's testified, to be honest.

17    I can't think of one.  Maybe I've had it and I just don't

18    remember.

19         MR. CRAWFORD:  Can we approach the bench, Your Honor,

20    the government and I?

21         THE CLERK:  It's up to you, Your Honor.  I can give

22    them the devices.

23         THE COURT:  Yeah.  We're going to use electronic

24    devices.

25         MR. CRAWFORD:  Absolutely.

1          THE COURT:  Thank you.

2          (Sealed bench conference on the record.)

3          (Open Court Proceedings:)

4          THE COURT:  What else did you want to tell me, Mr.

5   Crawford?

6          MR. CRAWFORD:  Your Honor, first of all, thank you for

7   taking the time at the bench.  I think it was very, it was, I was

8   able to tell the Court what we wanted to tell the Court.

9          Your Honor, so at this stage of the game, of the

10  hearing, we have proffered what we did as far as the medical

11  information regarding Mr. Walsh.  And we are not saying unto

12  itself, just unto itself that that is enough to put him in a

13  situation where he should be released, although we're saying it

14  should be should be a major, major factor and consideration.

15         Essentially, the problem here is that what the

16  diagnosis that he has, and no one's disputing the diagnosis, the

17  issue is can the detention center handle that type of diagnosis?

18  And I would submit they cannot.

19         Moving on to the other parts of the assessment that the

20  Court must make.  We all talked about and I think we can get past

21  whether or not Mr. Walsh is going to show up for trial.  In other

22  words, whether or not he is going to flee.

23         THE COURT:  I don't think the government's relying on

24  that.

25         MR. CRAWFORD:  They're not.  And I think we can move

1     past that.  And I'd like to move to the danger and safety of the

2     community.

3            At the hearing below in front of the Court, the

4     magistrate seemed to proffer and seemed to indicate, and we

5     presented evidence that Mr. Walsh, as the Court knows by now, has

6     no other extraordinary features about him except for the nature

7     of these crimes that he's charged with to show that he's a danger

8     to society.  He's not a drug user.  He doesn't own, possess

9     weapons.  He lived at home.  He doesn't have any type of passport

10    where he travels all over the world.  He doesn't have any kind of

11    extensive or large bank account.  He doesn't even have a car at

12    this point in time, I don't think.  So he has no means.

13           And there's nothing certainly that the government has

14    proffered or indicated that he would be someone that would not

15    show up.  However, the issue becomes the safety of the community.

16           The nature of these crimes, when you're dealing with,

17    you know, a pornography-type charge, and in this situation also

18    with a solicitation-type crime, it's important to note that, and

19    I think the government agrees, that Mr. Walsh did not act out in

20    any way to physically, communicate physically with any of the

21    alleged victims.  In other words, he didn't try to meet them.  He

22    didn't try to set up a time to meet them.  He didn't try to put

23    them in a situation where allegedly they were going to come to

24    his house.  Nothing along those lines.  This is purely online

25    stuff.

1          Now, I'm not diminishing that because it's a crime and

2     it's very, very serious.  However, that puts us in a situation

3     where, in my opinion, it's very easy for the Court to carve out a

4     situation and, frankly, leaving it to Probation to carve out a

5     situation where Mr. Walsh can be home awaiting trial.

6          And as I've indicated to the Court just a little while

7     ago, it's very important for him from an evaluation standpoint, a

8     mental health treatment standpoint, a physical health standpoint,

9     and also preparing for trial, that he be in that situation as far

10    as being able to help me and assist me as his counsel address

11    some of the issues that are going to come up at trial or even at,

12    potentially, sentencing.

13         So the issue here is, and I think it's been narrowed

14    down, is, can he be put in a situation where he cannot or will

15    not or at least pragmatically be put in a situation where he's

16    not going to go online and try to do any of the same type of

17    crimes that he allegedly did previously.  And in addressing that

18    issue, Your Honor, I will say that there's nothing that the

19    government has submitted or that's been raised that says that he

20    will, in fact, do that.

21         Yes, the government will have evidence that he did it

22    in the past, potentially.  The government will show, at least try

23    to show, that he was online doing these things.  But the real

24    issue today is reasonably can he be put in a situation where the

25    Court can feel confident that he will not be able to go online

1    and do these things any more.

2          Now, the Court can carve out an order that specifically

3    requires the Probation Department to not allow him to possess any

4    type of electronic device or that any electronic type of device

5    be allowed in his home.  His mom and dad are here today and they

6    have expressed they're fully willing to cooperate with the Court

7    regarding any type of setup that the Court would like to have to

8    ensure it.

9          I think it boils down to, can the Court feel

10   comfortable reasonably that Mr. Walsh is not going to go online.

11   In the last hearing it was requested and spoke and asked of the

12   Probation Department whether or not they can carve out a way to

13   guarantee that he's not online.  And the answer was no, I

14   believe, from my recollection.

15         I would argue and say that that's not a reasonable

16   response from the standpoint that it is possible, and even

17   probable, to cause that to occur.  Most probation departments

18   around the country on the state and federal level have electronic

19   means or methods to monitor, if someone has electronic devices in

20   their home, to determine whether or not they are accessing the

21   internet or using certain types of websites or what have you.

22   But I would indicate that any type of reasonable inspection

23   periodically of Mr. Walsh's home would allow all of us to feel

24   comfortable that he does not possess any type of electronic

25   device.

1          He would have no access to any money.  His mom and dad

2     and I spoke about this in great detail.  And at first what we

3     were trying to do is try to find a way to find a device to

4     actually lock the ability to receive the internet signal.  And

5     there's a problem with that because those devices are, in fact,

6     illegal.  So we can't do that.

7          And then we looked into other types of methodologies.

8     One of them was a program that we used, it's called ASAP in

9     Baltimore County, where they monitor electronic devices and

10    things like that.  But we determined that wouldn't be appropriate

11    because they just simply monitor the electronic device as it

12    exists.

13         So it came down to a proposition where his mom is ready

14    and willing, and she's picked out various locations -- they live

15    in the city right now, which is a condensed space where there's a

16    lot of internet devices going on -- where they're willing to move

17    to a location, a remote location in Baltimore County, that would

18    have a great distance between homes.  And she's ready and willing

19    to do that immediately.  She didn't do it yet because, for

20    obvious purposes, because she didn't want to do it if in fact the

21    Court wasn't willing, at least be open to it.  But she is willing

22    to do that.  And also the husband, Brian, is willing to do it as

23    well.

24         Now, he would be residing at her house, not the

25    father's house.

1          Of noteworthy is that he was living, meaning the

2    defendant was living with his dad when these things occurred.

3    His dad was unaware of this, of what was happening or not

4    happening.  But, nonetheless, for safety precautions, I think

5    everybody's in agreement that a living space in the surrounding

6    area such as Baltimore County or Anne Arundel County or one of

7    the local counties which the mom, Mrs. Walsh is ready and willing

8    to obtain immediately and is ready to push that button, would put

9    Mr. Walsh in a situation where he doesn't have access to any

10   other type of internet floating out there.

11         But, nonetheless, too, where is he going to get any

12   type of electronic device?  He's going to be required to stay

13   home.  He will be monitored by his mom, who will be there 24/7.

14   He will be monitored by Probation.  I'm assuming the relevant

15   times he would go out would be for any type of medical issues,

16   but also to see his attorney.  But he will be accompanied, and we

17   can put in the order, by his mother at all times.

18         So my point, Your Honor, is that I don't think, I think

19   it's reasonable to say that we can carve out a way for Mr. Walsh

20   to be home during all this period of time.

21         Now, we may say, why is this important?  Why is this

22   something that we're pushing so hard?  Well, I'll say to the

23   Court and I'll proffer to the Court that, number one, this is

24   something where Mr. Walsh was arrested and grabbed pretty

25   quickly.  The family was shocked.  They came to a lawyer.  We've

1   been able to have discussions with Mr. Walsh down at the

2   detention center.  But there's no replacement with having a

3   defendant in your office, able to strategize and plan, and also

4   able to see health professionals, which no doubtedly are going to

5   come into play here as far as any kind of end result.

6          For the Probation Department to say that they can't

7   guarantee it, well, nothing can be guaranteed in life from that

8   standpoint, or even when you have someone who doesn't have these

9   issues.  It's a reasonableness test.  And I think that it's

10  reasonable for the Court to order the Department of Probation to

11  have these periodic checks, make sure he has no electronic device

12  whatsoever.  If he has no electronic device, there's no other

13  concerns that could possibly be demonstrated by the government of

14  him affecting the public community, or even the victims that

15  we're talking about here.

16         There's nothing that they can indicate or allege that

17  he, for example, as the Court mentioned earlier, he reached out

18  during his detention time or he had someone else reach out to

19  victims, or sent notes or letters, or there's any kind of letters

20  or telephonic communication indicating that he's schizophrenic in

21  some way, he's not listening to what's being told.

22         So the only real issue here is, can the electronic

23  devices be controlled?  And I think in this day and age it's

24  perfectly reasonable for a probation department to be able to say

25  to this Court, yes, we can check on that.

1        On top of that, Your Honor, there's other methodologies

2   of even controlling that.  For example, I see all the time, and

3   they are done so often in any kind of sex offense or CP type of

4   matter, which is polygraph testing done periodically.  Usually

5   it's done post-trial, not pretrial.  But I have seen it done

6   pretrial.  And that could be ordered or put in the order if, in

7   fact, there's any question of that.

8        So when you balance the whole equation of whether or

9   not Mr. Walsh, who is in a situation physically like he is at the

10  detention center, and mentally, and the nature of this crime or

11  these alleged crimes, as far as how any type of psychiatric

12  medical reports are going to impact the Court, which is going to

13  be in a tremendous way, the effect it will have on the Court's

14  outcome of any decision and, frankly, even any kind of agreement

15  or discussions between counsel and the government, it's almost

16  our duty in some ways to make sure that that happens.  It's

17  almost impossible to have a thorough check and complete analysis

18  done the way I want to do with Mr. Walsh while he's at the

19  Detention Center.

20       Now, that's a fairly common argument, I know.  But it's

21  so great and so true, the truism is so --

22       THE COURT:  Excuse me, counsel.

23       MR. CRAWFORD:  Sure.

24       (Pause in proceedings.)

25       THE COURT:  Okay.  Go ahead.  I'm sorry.

1          MR. CRAWFORD:  That's okay, Your Honor.  And just to

2    sum up.  The truism is that, in fact, we need to have reports for

3    Mr. Walsh to have an effective outcome here, an effective

4    outcome, because it's obvious, some of the things I've proffered

5    to the Court about his history, it's obvious those things are

6    going to come into play and should be relevant here about what's

7    happened.

8          Simply because, in fact, the nature of the crime, and

9    the Court can take into consideration no one's saying he's going

10   to go out and rob a bank, no one says he has a gun, no one says

11   he's going to leave the premises, no one has any concerns about

12   that, it's simply abstract that we're afraid and we want him in

13   the detention center.

14         I think in a reasonable fashion the Court can carve out

15   some sort of order.  And I would be willing to work with the

16   Court, whatever the Court desires or needs.  But I'm asking that

17   the Court release Mr. Walsh either in a community detention

18   manner or some sort of temporary manner for any type of medical

19   treatment and health care treatment.

20         And we'll submit with that.

21         THE COURT:  Thank you.  All right.  Let me call on you,

22   Mr. Mihok.

23         MR. MIHOK:  Your Honor, I'm going to start by pressing

24   three points the defense just made.

25         First, on the notion that CDF can't handle the

1    problems, both the physical and mental, there's absolutely

2    nothing in the record, and we had an extensive proffer, to

3    indicate that CDF is incapable of handling the defendant's

4    physical and mental concerns or health issues.  There's just

5    nothing on this record that the Court can point to and find and

6    rely on to indicate that CDF can't do it, hasn't been doing it,

7    that there's a clear deficiency in the care that they're

8    providing.  There is nothing to support that other than Mr.

9    Crawford saying, can CDF support him and provide him the services

10   he needs, and answering rhetorically no.  Other than that, there

11   is nothing on this record that the Court can find that would

12   justify the defendant's release.

13          Again, it's not just is it causing a problem or are

14   there some concerns.  It has to be an exceptional reason.  And we

15   haven't even heard a justified reason, a supported reason.  So

16   that's number one.

17          Number two.  Probation and Pretrial, they do a

18   wonderful job, but they're not magicians, they're not

19   clairvoyant.  They can only monitor what they know about.  And

20   they can only monitor internet-capable devices of which they are

21   aware.  There is no locking mechanism, there's no ability to set

22   up some sort of wifi-blocking situation to guarantee there is no

23   internet.

24          And point of fact, Your Honor, I mean, I've got two

25   pending right now, and multiple cases over the last several

1    years, of a defendant who was on very restrictive conditions of

2    supervised release after they had been convicted and sentenced

3    and served their time, who had very strict internet-monitoring

4    conditions of supervision in place, who had unauthorized devices.

5    And ultimately Probation, you know, sniffed those out, found

6    those devices they were hiding.  And in two cases going right now

7    that I have, in both of those child pornography was found on

8    those devices.

9           So Probation, Pretrial cannot guarantee that the

10   defendant won't get a device and access the internet.  That's

11   just the reality.  They just, they can't do that.  They have to

12   rely on the defendant in the first instance to identify any

13   devices that he's using.  And, obviously, in those situations and

14   in this situation the concern is that he would not be forthcoming

15   or candid with Pretrial because he has a clear proclivity for

16   images of minor children, specifically teenage boys.

17          With regard to the concern -- and just to be clear on

18   this, and I'll get into this more, but defense counsel is saying

19   all we have to do is address this online concern and that takes

20   care of everything.  That's not the government's only concern.

21   You know, the defendant is going to -- what's being proffered

22   here is the defendant being released to some remote residence,

23   but still in the area and in the area where he specifically

24   targeted these minor boys, these minor victims.  And that's a

25   cause for concern.  I'll get into that more in a moment.

1          As far as, you know, the third item, before I get to my

2     other comments.  You know, any reports related to the defendant's

3     mental health and any reports related to mitigation, which seems

4     to me that has the ring of more of something that's handled and

5     relevant in connection with sentencing, but trial preparation,

6     preparation for litigation, sentence, any reports in mitigation

7     related to the defendant's background and history, those are the

8     kinds of things that get prepared in all kind of cases, every

9     kind of case with defendants who are detained either at the

10    Chesapeake Detention Facility or at CTF in DC.  Happens all the

11    time.

12          So to say it's impossible is, again, ringing a little

13    hollow.  Those are the same obstacles, the same hurdles, the same

14    issues that are faced in those other cases where we get very

15    robust memoranda and reports and background and history related

16    to the defendant's background characteristics and other things

17    that are relevant.

18          So, again, the notion that it's impossible to have

19    these reports prepared or to prepare for trial if the defendant

20    remains detained, just maybe not all the way to the degree that

21    the defendant would hope for, maybe it's a little more

22    inconvenient, but that it's impossible to get those prepared,

23    that just rings hollow.  Because I'm sure this Court sees it,

24    too, with defendants who are detained prior to trial, prior to

25    sentencing, and you don't see any drop-off in the preparation for

1    trial, you don't see any drop off in the preparation of

2    mitigation paperwork and reports and records in support of a

3    lower sentence.

4            Turning to the 3142(g) factors, the nature and

5    circumstances.  Your Honor, as you've indicated, all of these

6    offenses are crimes of violence.  All of them have a presumption

7    in favor of detention.

8            With regard to the weight of the evidence, as Judge

9    Coulson found, the weight of the evidence is strong.  We have

10   computer forensics done to date which clearly indicate that the

11   defendant was the individual who was engaged in this activity

12   over a prolonged period of time, that the defendant, by his own

13   admission, acknowledged that he was the individual engaged in

14   this activity.  And to date we have identified 30 victims of the

15   defendant's conduct.

16           Really, we have, Your Honor, levels of aggravating

17   conduct here.  At the first level we have a defendant posing as

18   someone else, here a teenage girl online engaged in these chats

19   for the purpose of initially obtaining images of these boys,

20   minor males, in sexually explicit conduct.

21           We have a second level of aggravation in that the

22   defendant's himself a graduate of a local private school,

23   appearing to target other local private schools in the area as

24   the vast majority of the 30 victims we've identified to date

25   attended any of the private schools in Baltimore County and

1    Baltimore City.  So that's obviously aggravating.

2              Third, that the defendant used the initial images and

3    videos he obtained to extort more graphic images and videos from

4    these minor victims.  And this was a part, this was a part that

5    was especially chilling and disconcerting in that the

6    defendant -- and we have a couple of videos, but also text

7    exchanges, communications exchanged -- the defendant is so cold

8    and callous.  These boys, once they realized what's happened to

9    them, are pleading with him not to make them do the more graphic

10   things, to take the more explicit photograph or video and send it

11   to him.  In the videos they're actually breaking down into tears,

12   begging him to not make them do this.  And he's saying, he's

13   telling them, very callous, just really very evil, I mean, just

14   telling them you're going to do it, you're doing it.

15             And they're begging and pleading with him.  You know,

16   they go to a local school, they're on the sports team, please

17   don't make me do this.  You know, in one of the videos a boy is

18   crying.  And the defendant's saying do it or I'm going to send

19   the images you previously provided to your friends and family.

20             And fourth, the fourth level of aggravation is that the

21   defendant takes these videos of these boys who have pleaded with

22   him not to force them to create this content and he turns around

23   and he sells it.  He advertises it on Twitter.  And we have

24   evidence of him accepting payment for those images and videos on

25   both Venmo and PayPal.

1          And the defendant, by his own admission, indicated that

2    he was in fact doing that and that he had made about $8,000

3    selling the images and videos that he had obtained.

4          So the weight of the evidence, Your Honor, is very

5    strong.

6          History and characteristics.  This is, as defense

7    counsel has pointed out, the one area of mitigation for the

8    defendant.  He is relatively young, 24 years old, and he does not

9    have a prior criminal history.

10          However, we will note, and as Judge Coulson found, this

11    activity was going on for a long period of time --

12          THE COURT:  That was what I wanted to ask you to

13    clarify.  What period of time does the government allege?

14          MR. MIHOK:  Well, no later than November of 2019, and

15    through the time when we executed the search warrant, really,

16    Your Honor, which was May of 2021.  And during that time, the

17    defendant was engaged -- and this, this wasn't, you know

18    isolated, these weren't isolated incidents.  I mean, he was

19    targeting, finding, soliciting, and then turning around and

20    extorting, and then taking those images he obtained and selling.

21          So this was involved, not only -- so it's not just like

22    it started in November of 2019 and so far our investigation shows

23    that's roughly the earliest we can trace this to, but then

24    there's a long period where there's absolutely, you know, a year

25    and a half goes by and it's nothing -- it's, you know,

1    consistent, persistent, and the volume of evidence that we

2    recovered illustrates that the defendant spent a lot of time

3    engaged in this conduct of, you know, posing as a teenage female

4    online and engaging in those chats, and then finding new victims

5    to take advantage of, and turning around and extorting more

6    graphic images from them.

7              So it was something that was protracted and took a lot

8    of time.  And this happened in the same house, under the same

9    roof, where he's proposed to go reside with third-party

10   custodians.  That doesn't really give the Court much comfort.

11             And on the last point, the danger to victims.  And this

12   is where, I want to make sure, and maybe, I don't think maybe I

13   was doing the best job before explaining this.  Obviously, under

14   the Victim Rights Act, 3771, this is one of those times when

15   victims have an absolute right to be heard.  Of course, like

16   anything, this Court can give it whatever weight it determines it

17   deserves.  But, clearly, input from victims, especially minor

18   victims of tender years, especially minor victims like these

19   victims, who have been traumatized by this conduct.

20             Again, Your Honor, this wasn't like a one-time incident

21   with one victim and it stopped as soon as, you know, the

22   defendant didn't engage in a pattern of conduct.  This is a

23   pattern of conduct with 30 separate victims over and over again.

24             So these boys, when I say they were traumatized, that

25   is, that is clear.  And it's not just that they were traumatized

1    when they initially provided the image of themselves exposing

2    themselves, or doing whatever that the minor female they thought

3    they were communicating with, and that it ended there.  But the

4    defendant turned around and used that to force them, extorting

5    them to provide additional images.

6            So it's that, that threat for the future conduct and

7    that ongoing pattern of threatening behavior over and over again.

8    And we saw it, we see it in those discussions in the videos, in

9    the communications exchanged with these victims.

10           So, it's already a crime of violence even if he didn't

11   engage in all of that conduct.  But from the government's

12   perspective, that's what really elevates it.

13           And I said there's four levels of aggravation here, one

14   piled on top of the other.  But, also, this is what makes those,

15   the input from the victims regarding the release of the defendant

16   which is being proposed by defense counsel more relevant.

17           And, again, it's not that these victims are sort of

18   abstract victims who, you know, live in California or Canada or

19   Germany, and the defendant really would have no way of contacting

20   them, getting in touch with them, going to find them.  But in

21   this case the defendant, by his conduct, targeted minors in this

22   exact geographic area where he is purporting to be released.

23   Specifically targeting from comments he made, from the

24   investigation from identifying these victims and the schools they

25   attend, that he was specifically targeting these boys who

1   attended the private, some of the private schools in the area.

2          So their concerns and that risk of danger rings more

3   true in this case than really any case I can remember.  The only

4   thing you can say in mitigation on that is that it is true, we

5   did not have him meeting with one of those 30 victims we've

6   identified today and having hands-on contact.  But that's about

7   all you can say in mitigation in this case.

8          We have the defendant targeting teenage boys, minor

9   victims as young as 12, in this exact community, attending these

10  private schools, the same private school that he attended.

11         So their concerns, their concerns about the danger he

12  poses to them if he's released are critically important, the

13  government would submit, for this Court to consider when it's

14  evaluating the risk of danger because you learned things about

15  them, he hunted them online, he found them, he targeted them, he

16  extorted them.  And it's not, you know, it's not difficult,

17  again, we're not talking about some random kid who was on an

18  online forum that he happened to meet who was, lives in Kansas or

19  Texas.  We're talking about boys, Baltimore County, Baltimore

20  City, boys that live in this area.

21         So the victim input is critical here.  And identified

22  by name Victim 4 would not feel safe.  That exactly goes to the

23  danger issue, and I think is relevant for this Court to consider,

24  if the defendant were released because of the trauma the

25  defendant has caused our family.  No way to guarantee the

1   defendant wouldn't be able to access an electronic device and try

2   to contact our son again.  Knowing he was released would cause

3   our family undue stress, worrying about the possibility of what

4   he would do.

5           Again, that's exactly germane and relevant to this

6   Court's determination as to whether or not the government has met

7   its burden in showing that the defendant is a risk of danger to

8   this community by clear and convince evidence.

9           Others, Victim 5, is opposed.  Victim 6, that he should

10  remain detained.  Given his predatory actions toward our son and

11  numerous other victims, his release would further jeopardize the

12  safety and innocence of other children.  And an individual

13  willing to commit such crimes against minors should remain

14  detained behind bars.

15          Victim 11, opposed.  I'll circle back around to Victim

16  7.

17          Victim 13, that their son was traumatized enough.  They

18  could reach out, the defendant could reach out and re-traumatize

19  and re-victimize their son.  Don't need any more victims.  If the

20  opportunity arises, he may start all over again.

21          And some of the victims, Your Honor, are in counseling

22  and trying to address and deal with the trauma they suffered by

23  being extorted over a period of time by the defendant.  And

24  they're worried about just the fact their son learning that the

25  defendant had been released, the impact that would have on their

32

1    son.

2              Victims 14 and 15, the extent they are talking about

3    how the defendant targeted their sons, especially during this

4    time of COVID.  And the defendant inflicted lifelong scars on

5    them, and imploring the Court not to release the defendant.

6              Victim 18 strongly opposes release.  Emotional pain and

7    trauma.  And that the defendant's release from custody would

8    instill panic, fear, and worry in his current victims, again,

9    because they all live in the area.  But also allowing the freedom

10   to prey on more innocent children.  And that's the thing that

11   Pretrial, Probation cannot guarantee.

12             Again, Victim 23, that he needs to be detained.

13             Victim 24, I prefer he's not released.

14             Victim 25, prefer he's remained detained and that our

15   son experienced great trauma from his interaction with the

16   defendant and we don't want another child exposed to his

17   predatory behavior.

18             Victim 28.  Again, the Court can read that there.  But

19   again, quite extensive comments about the concerns of the

20   defendant's release.

21             And Victim 30, that the defendant, again emphasizing

22   the trauma that the defendant's conduct caused and that if he was

23   released they would have concerns.

24             Victims, Victim Number 7 and a parent of Victim Number

25   7 submitted statements.  Victim Number 7 wrote:  I have been made

1    aware that the person who abused me may be released under bond.

2    I believe that he was, if he has that opportunity, he will hurt

3    more minors over the internet.  He abused me for multiple months

4    on the internet, and many other minors.  I assume someone like

5    this should not have the opportunity to touch the internet

6    because if so, more people like me will be hurt for the rest of

7    their lives, even scared of the internet.  He not only hurt me

8    but he used fake names and pictures to lead me into a situation

9    we never wanted.

10           And parents of Victim Number 7.  I recently was made

11   aware there was consideration to release the person who sexually

12   abused and exploited my 14-year-old son for over a year.  The

13   idea of this pedophile being freed on bail or bond is

14   preposterous.  We are vehemently opposed to his release.  He

15   preyed on young children for years with multiple victims.  This

16   person used the internet to lure his victims and abuse them over

17   long periods of time.  We all know that data proves that

18   pedophiles have a high rate of reoffending.  The internet makes

19   it very easy for a pedophile to make contact with children or

20   access child pornography.  He used the internet at every step of

21   the way for over a year to cause damage that no child should ever

22   have to endure.  These are sex crimes against children and being

23   released from jail will pose a significant safety threat to our

24   children and our community.  To release him from bail is

25   equivalent to disregarding our children's safety.  The one

1    comfort we had is that he is in custody and my son is protected.

2    Please keep all of our kids safe from this pedophile, make sure

3    he doesn't have the opportunity to sexually abuse and exploit any

4    more children ever.  We appreciate your hearing and understanding

5    our concern.  It's signed Parent of a Victim.

6           Your Honor, if I could just have a moment.  There are

7    two victims' parents present.  And I would just want to check

8    with them to see if there's anything they would want to address

9    the Court at this time.

10          THE COURT:  All right.

11          (Pause in proceedings.)

12          MR. MIHOK:  Your Honor, for the record, as indicated in

13    my cover letter, that we would just refer to this victim, this is

14    the mother of one of those victims, as Victim 19.

15          THE COURT:  Thank you.  Okay.

16          MR. MIHOK:  So ma'am, if you could.

17          VICTIM 19:  Hi, Your Honor.

18          MR. MIHOK:  Just keep your voice up.

19          THE COURT:  I don't mean to pry.  But if you remove

20    your mask, you only may do so if you're vaccinated.

21          VICTIM 19:  Hi.  The main reason why I'm here today is

22    I wanted to prevent, try to prevent this from happening to

23    anybody else.  It happened to my son.  It happened to her son.

24    And it happened to 28 other people's young sons.  They didn't ask

25    for this.  They are innocent boys.  My son was 13.  And the

35

1    thought of what you exposed him to is, is terrifying.

2           To know that the pictures that he sent you and what

3    you'd done with them is out there on the dark web and that you

4    sold them --

5           MR. CRAWFORD:  Judge, I'm really reluctant to interrupt

6    and object but I think that the important thing here is that she

7    not address the defendant, that she talk about the factors that

8    are relevant to the Court.

9           THE COURT:  This is --

10          MR. CRAWFORD:  I'll try to be brief.

11          THE COURT:  This is a detention hearing so I think the

12   victims have a right to be heard, absolutely.  But I do agree.

13   This defendant -- and I'm not here to give a civics lesson.  My

14   job is very circumscribed.  But there is a presumption of

15   innocence.  You've all convicted him, and he hasn't been

16   convicted yet.  So let me just make that point.

17          The question for me today is whether there are any,

18   whether he, whether the government establishes by clear and

19   convincing evidence that his, that he would be a danger to the

20   community if released.  And feel free to address that question.

21          VICTIM 19:  Yes.  I believe so.  I believe what he's

22   done to 30 kids, and God knows how many others, if he's allowed

23   to be out, then it can happen again.  It's very easy to get

24   access to a phone, to the internet, regardless.  I mean, this was

25   done in his home prior.  So, yes, I feel it would be, would not

1    be good to release him.  Thank you.

2              THE COURT:  Thank you.  Anybody else?

3              MR. MIHOK:  No, Your Honor.

4              THE COURT:  Yes, there is someone.

5              MR. MIHOK:  I'm sorry, yes.  Great.  And so this is a

6    parent of Victim Number 7, Your Honor.

7              THE COURT:  Okay.

8              MR. MIHOK:  To be clear, the statement that I read was

9    from Victim Number 7.

10             PARENT OF VICTIM 7:  Good afternoon.

11             THE COURT:  Good afternoon.

12             PARENT OF VICTIM 7:  The one point I just wanted to

13   make was the plan of sending him to this rural or countryside of

14   Baltimore County, which I know Baltimore County can be a large

15   county, but I live in a rural countryside of Baltimore County.

16   And the idea that somebody who has abused my son and many more

17   has, would be in even closer proximity to me is heart wrenching.

18   And so the safety becomes much more real when I hear that there's

19   a plan to put him possibly closer to me.  But also to reiterate

20   the almost impossibility that there is to prevent somebody from

21   having wifi or internet access or devices.  So I just wanted to

22   piggyback on that.  Thank you.

23             THE COURT:  Thank you.

24             MR. MIHOK:  Thank you.  So unless the Court has

25   questions for me, that's the government's presentation, Your

1    Honor.

2              THE COURT:  All right.  Thank you.

3              MR. CRAWFORD:  Judge, I think I have the last word.

4    I'll make it very brief, if we could, regarding this.

5              THE COURT:  Yes.

6              MR. CRAWFORD:  Just to address a couple things.  First

7    of all, I find it very interesting counsel's talking about the

8    Probation Department.  And the government's arguing that it's not

9    effective, it can't be done, it doesn't work, in fact cites

10   several other cases that he had regarding CP.  And in effect he

11   finally indicated that the Probation Department, quote, "sniffed

12   out the problem."

13             Well, I look at that as success.  That means the

14   Probation Department's doing their job.  And that's why the Court

15   orders the Probation Department to do these things.  So that's

16   success, in my situation, which shows that it can be ordered.  If

17   the order's violated, then the Probation Department's going to

18   sniff out and find the problem.

19             In many levels I agree with counsel from the

20   standpoint, obviously, it's a very serious situation.  And from

21   the standpoint that the victims, the alleged victims here, I

22   don't want to be disrespectful because I empathize and it really

23   is not relevant.  But the issue and the point is does, do these

24   statements and do the feelings of the victims play a part in the

25   Court's determination as to whether or not the community is safe

1    as a result of that.

2           I think in trying to understand counsel's argument, I

3    think what counsel's saying, the mere fact that they're in the

4    same proximity, the mere fact that it may have occurred in a

5    vicinity as far as schools, things like that, that somehow or

6    another they're more afraid and that somehow that heightens the

7    safety aspect of this.

8           We're looking at something and we're looking at it from

9    the opposite back-side view.  There's not been one thing the

10   government has proffered here today that talks about the fact

11   that the evidence shows that Mr. Walsh will, in fact, do that, or

12   have any type of tendency to do that.

13          The one statement that counsel said, well, that the

14   evidence and the statistics show that with CP cases the repeat

15   recidivism is very high.  I adamantly disagree with that.  And

16   there's been no evidence or anything presented to show those

17   statistics.  In fact, I would proffer the opposite in this

18   situation.

19          The heightened aggravating conduct, where defense is

20   put in a position to try to mitigate things that are obviously,

21   that have been alleged, are very, they're not good.  But, on the

22   other hand, it's my job.

23          And I would say this.  As far as the four aggravating

24   conducts that counsel talked about, I would not look at them as

25   specific, even though they may be somewhat cited statutorily,

1    they're not really specific aggravating.  For example, posing as

2    someone else on the internet.  That's the nature, that's almost

3    like under the original CP statute that Congress enacted decades

4    ago, when they enacted an additional penalty for using a computer

5    looking at CP.  That's like a very -- it happens all the time.

6         As far as a local high school, I fail to see how --

7         THE COURT:  Well, I'm not sure I can agree with that

8    assertion.  I have plenty of cases involving child exploitation

9    and no two are ever really quite alike.

10        MR. CRAWFORD:  Right.

11        THE COURT:  But the allegations here, and they're

12   allegations, are not typical, in my view.

13        MR. CRAWFORD:  Right.  I don't disagree with that

14   merely because of the number of the allegations made.  But as far

15   as the elephant in the room, yes, this is alleged horrific

16   activity.  And counsel's talking and talking about the weight of

17   the evidence.

18        But the bottom line becomes, can the Court carve out

19   something specific that the defendant can adhere to.  There's

20   been nothing presented by the government indicating that the

21   defendant will not abide by any more here.  All we hear is the

22   clamoring of the cymbals, this is bad, this is bad, this is bad,

23   I feel, I feel, I feel, therefore, he should not be released.

24        It's my argument that the Department of Probation,

25   Pretrial is more than capable of monitoring and sniffing out if

1    there's any indication.  It's not easy.  There's been no

2    indication of how easy it is to go get a phone.  I wouldn't know

3    how to do it.  He has no money.  He's going to be in a house

4    where he's under house arrest.  If it violates -- he could break

5    out of jail.  I mean, of course there's nothing --

6              THE COURT:  I'm just curious, Mr. Crawford, if your

7    argument is what it is, why wouldn't that apply to -- why is

8    anybody incarcerated pending trial if flight isn't the issue?

9              MR. CRAWFORD:  Well, I think flight is the issue a lot

10   of times.

11             THE COURT:  But that's not an issue here.

12             MR. CRAWFORD:  Well, understanding what the

13   government's argument is, that the burden is on the defendant and

14   that the nature of the crime is that it's a violent crime,

15   understanding that.

16             In this situation, as compared to some other

17   situations, I would say there was no, no past or no attempt to

18   reach out and actually conduct, contact other individuals.  There

19   was no --

20             THE COURT:  And the government acknowledged that.  It

21   used the word "mitigation."

22             MR. CRAWFORD:  Right.  Right.  And there's no other

23   indication that there are any additional other factors.  There's

24   many -- for me to address that, there's so many different

25   possible factors to why someone would be kept in jail.  If you're

1    talking about murder, if you're talking about these type of

2    crimes.  I would say that I see many times when you talk about an

3    online exploitation scenario, on a state level there's a release

4    majority of the time.  I can't say majority.  A lot.  On the

5    federal level, from what I see, it's released quite a bit.

6         So not one case is the same as another.  But I still

7    fail to see how we can't carve out, in my opinion it's our

8    obligation to carve out a scenario where he can reasonably be

9    kept in a home in community detention, no phones, no internet

10   contact, and that solves that problem.

11        There's no other indication that he's going to act out,

12   do anything else.

13        I would submit.  I don't want to keep prolonging it.  I

14   think the Court understands my argument.

15        THE COURT:  Thank you.

16        MR. CRAWFORD:  And we'll submit on the evidence, Your

17   Honor.

18        THE COURT:  Okay.  Thank you very much.  Of course, I

19   always appreciate when members of the public take the time to

20   attend a proceeding in court.  Let me start by setting out the

21   posture of the case.

22        This is essentially a motion for review of a magistrate

23   judge's detention order, so the applicable provision is 18 USC

24   Section 3145(b).  Upon such a motion, the Court must promptly

25   conduct a de novo proceeding.  And in this particular proceeding,

42

1      there could be two questions.  One is whether there are

2      conditions of release that will reasonably assure the appearance

3      of the person.  That's not on the table.  The government has

4      acknowledged it's not actually concerned about the defendant as a

5      risk of flight.

6              The other consideration is paramount, and that is the

7      Court must promptly determine whether there are conditions of

8      release that will reasonably assure the safety of any other

9      person and the community.  And I must make an independent

10     determination.  I cite U.S. v. Stewart, 19 F.Appx. 46, at Page

11     48, that's a 2001 Fourth Circuit decision; U.S. v. Rueben, 974

12     F.2d. 580, at 585 to 586, a 1992 decision of the Fourth Circuit.

13             I am also looking at the factors that are pertinent to

14     the analysis.  We've mentioned many of them.  3142(g) is

15     relevant, among others, the burden ultimately being on the

16     government to establish by clear and convincing evidence that the

17     defendant poses a danger, would pose a danger if released.

18             The factors the Court must consider are the nature and

19     circumstances of the offenses charged, the weight of the evidence

20     against the defendant, the history and characteristics of the

21     defendant, including family ties, character, ties to the

22     community, criminal history, and then nature and seriousness of

23     the danger to any person of the community that would be posed by

24     release.

25             I already mentioned that given the nature of the

43

1    charges, there is a rebuttable presumption -- and this is

2    crucial, I think -- a rebuttable presumption that no condition or

3    combination of conditions will assure the safety of any other

4    person and the community.  I cite Section 3142(e).  As I see it,

5    the defendant has not rebutted that presumption.

6         And I want to acknowledge the people who have come

7    today on behalf of their family members.  And I have heard, and

8    they were given the right to be heard.  I put on my hat as a

9    parent and I would feel as they do.  And I would be just as

10   vocal.  But that is not the hat I'm wearing today.  And I hope

11   they can understand that.

12        The defendant is presumed innocent.  He has not been

13   convicted of anything.  This is a detention review hearing.  And

14   I have very clear parameters of what I'm required to consider.

15   And while I would understand that the release would be

16   frightening perhaps, and even traumatic for the victims, I don't

17   think those are the criteria I can consider.

18        I have to consider what the statute says.  Congress has

19   said what I must consider.  Not the personal feelings of anyone.

20   And I understand them and I respect them.  And I want to make

21   sure I heard, that you understand that I appreciate how painful

22   this is for all of you.  That's not my responsibility today.

23        That said, those people who can point to specific

24   reasons, as one mother did, about how virtually impossible it is

25   to rule out internet access, that's a factor to me.  Not a

44

1   personal anxiety, which is legitimate, but not necessarily
2   relevant to what I have to do today.  This isn't the sentencing.
3   We're not anywhere near that phase of the case.

4          Now let me focus on the factors that I have announced
5   that Congress has directed me to consider.

6          There are mitigating factors, and the government
7   acknowledges them.  I have before me a 24-year-old first-time
8   alleged offender.  That is to say, no prior record.  And young.

9          And I'm not going into details because of the obvious
10  sensitive nature of this, but this defendant presents with a
11  serious medical history, with multiple components.

12         But to the extent there was an allegation, and I think
13  I can say this much in unsealed proceedings, of a lack of
14  adequate care, that hasn't actually been demonstrated.  I think
15  the record is to the contrary.  And I do want to make note of the
16  fact that in the Pretrial Services report -- and it doesn't have
17  an ECF number, but Ms. Martin is here, has prepared it -- at the
18  time of the arrest the defendant disclosed a very serious health,
19  physical health issue, but he hadn't been to a doctor for that
20  condition in over two years, according to what Ms. Martin, who's
21  here today, wrote in this report.  And that's significant because
22  the defendant's attorney vigorously argued to the Court as a
23  ground to release him that he's not getting the proper care.

24         First of all, the records don't reflect that.  And the
25  minute I hear that that's true, somebody I hope will tell me

1    because there will be major efforts made to make sure that that

2    is rectified.  As the records indicate, 132 pages of them I read,

3    it seems to the contrary.  He wasn't getting the proper medicine

4    but that's been addressed.  And counsel for the defendant

5    acknowledged as much at the bench.

6           So, this suggests to me the fact that he himself hadn't

7    gone to a doctor for this condition in over two years I think is

8    important for me to assess in considering whether I have an

9    exceptional circumstance before me.

10          The other factors that I have to take into account when

11   I look at the nature and circumstances of the offense and whether

12   this defendant would pose a danger, I must also look to the

13   strength of the government's case.  And I want to look at the

14   particular allegations.  I realize they're just allegations but I

15   think, as they have been painted, they are chilling.

16          This is not, according to allegations, not a one-off,

17   if you will, experience.  This was an occurrence, if you will,

18   that spanned from November of 2019 to May of 2021.  That is a

19   very long time.  Now, the defendant was even younger than he is

20   now when it began, but this was not an isolated incident.  There

21   are approximately 30 victims.

22          And the nature of the crime.  They're not all the same,

23   Mr. Crawford, frankly.  And this one is particularly alleged to

24   be disturbing.  And the reason I think Judge Coulson got it right

25   is when I look at the way the alleged crime occurred, it's

1    extremely conniving and calculating.  And that's a worry when I

2    think about releasing the defendant.

3            So, this is a child pornography case, but the manner in

4    which it was alleged to have occurred is what is really

5    disturbing.  The victims were targeted.  They are local.  And I

6    thought that point was important.  These are not victims living

7    in other far-away jurisdictions.

8            There was extortion, essentially, according to the

9    allegations.  Not just solicitation, but then extortion.  And

10   then selling of the pornography.  And all of this strikes me as

11   extremely calculated.  And that, understanding the way in which

12   the crime occurred through the use of the internet, I think

13   assuring that this defendant would be unable to engage in related

14   or similar or the same kind of conduct if released is a concern

15   of the Court, a very grave one, in my opinion.

16           So I would be troubled under that, looking at the

17   nature of the crime and how savvy, really, the defendant was, and

18   sophisticated in how he manipulated people, that's a worry.

19           I am mindful, as I said, that the defendant is

20   relatively young, with a mental and physical health history and a

21   lack of criminal history.  And generally, with those kinds of

22   circumstances, if at all doable, release is something we aim for.

23   So I understand, Mr. Crawford, why you fought as hard as you did.

24           But the idea or the claim that his physical and mental

25   health conditions would somehow alter the analysis under 3142(g)

47

1    or constitute an exceptional circumstance under (c), I don't

2    think these overcome the rebuttable presumption in favor of

3    detention.  At least what I've seen so far, his needs, mental and

4    physical, have been addressed rather assiduously by CDF, where he

5    is being detained.

6          Judge Coulson's opinion at ECF 23 addresses many of

7    these same points.  As I said, his health could be a

8    consideration under appropriate circumstances.  And <u>Creek</u> is one

9    of the cases Judge Coulson cited for that proposition.  But when

10   I look at the totality of the allegations here and the strength

11   of the government's case -- I left out one other fact I meant to

12   say when I described him as very conniving and calculating.  And

13   that was posing, as he did, as a female teenager to engage with

14   his victims.

15         It's that kind of behavior that gives me grounds to

16   conclude that I don't think the presumption has been rebutted or,

17   to put it differently, that, in fact, the government has

18   established by clear and convincing evidence that no condition or

19   combination of them would assure the safety of the community.  So

20   I am going to deny the motion.

21         Now, the denial would be without prejudice to the

22   extent that if there is a medical crisis of some sort or some

23   failure on the part of the institution to meet his physical and

24   mental needs, then you need to bring that to my attention.

25         MR. CRAWFORD:  Absolutely.

48

1          THE COURT:  All right.  That's the ruling of the Court.

2          MR. CRAWFORD:  Judge, thank you for your time.  I

3    appreciate it.

4          MR. MIHOK:  Thank you, Your Honor.  Your Honor, we were

5    supposed to have a conference call yesterday on this case.  I

6    don't know if the Court has any, you know, if we were --

7          THE COURT:  I have a meeting at four, but somehow I

8    think I'm a little late for it.  So did you want to do that

9    today?

10         MR. MIHOK:  We'll set something up with chambers, Your

11   Honor.

12         THE COURT:  It's a committee meeting which I am

13   chairing.  So whether we were able to reschedule, that's why my

14   assistant came out.

15         MR. MIHOK:  Gotcha.

16         THE COURT:  I certainly didn't expect this to take two

17   hours.

18         MR. MIHOK:  Well, neither did I, candidly.

19         THE COURT:  Okay.  So, Mr. Mihok, why don't you call

20   with Mr. Crawford and give us a date we'll be able -- any time

21   after five I'm always available.

22         MR. MIHOK:  Or maybe just a status report.

23         THE COURT:  Okay.

24         (Conclusion of Proceedings at 4:28 p.m.)

25

1

2

3

4                          REPORTER'S CERTIFICATE

5

6          I, Mary M. Zajac, do hereby certify that I recorded

7   stenographically the proceedings in the matter of USA v. Matthew

8   K. Walsh, Case Number(s) ELH-21-0161, on August 25, 2021.

9          I further certify that the foregoing pages constitute

10  the official transcript of proceedings as transcribed by me to

11  the within matter in a complete and accurate manner.

12          In Witness Whereof, I have hereunto affixed my

13  signature this _____ day of _____, 2021.

14

15

16

17                          _____/S/_____
                            Mary M. Zajac,
18                          Official Court Reporter

19

20

21

22

23

24

25

**$**

**$8,000** [1] - 27:2

**/**

**/S** [1] - 49:17

**1**

**10-year** [1] - 4:1
**100%** [2] - 6:10, 7:21
**101** [1] - 1:24
**11** [1] - 31:15
**12** [1] - 30:9
**13** [2] - 31:17, 34:25
**132** [1] - 45:2
**14** [2] - 4:12, 32:2
**14-year-old** [1] - 33:12
**15** [1] - 32:2
**15-year** [1] - 3:25
**18** [5] - 4:4, 5:10, 7:14, 32:6, 41:23
**19** [5] - 34:14, 34:17, 34:21, 35:21, 42:10
**1992** [1] - 42:12

**2**

**2001** [1] - 42:11
**2019** [3] - 27:14, 27:22, 45:18
**2021** [6] - 1:10, 4:12, 27:16, 45:18, 49:8, 49:13
**21201** [1] - 1:24
**23** [3] - 4:11, 32:12, 47:6
**24** [2] - 27:8, 32:13
**24-year-old** [1] - 44:7
**24/7** [1] - 18:13
**25** [4] - 1:10, 4:10, 32:14, 49:8
**28** [2] - 32:18, 34:24
**2:32** [1] - 2:1

**3**

**30** [7] - 25:14, 25:24, 28:23, 30:5, 32:21, 35:22, 45:21
**30-year** [1] - 4:1
**3141** [1] - 5:10
**3142** [1] - 8:19
**3142(e)** [1] - 43:4
**3142(e)(3)(E** [1] - 4:5
**3142(g** [6] - 6:10, 7:1,

8:19, 25:4, 42:14, 46:25
**3145(b)** [1] - 41:24
**3771** [2] - 7:14, 28:14
**3771(a)(4** [1] - 10:22

**4**

**4** [1] - 30:22
**46** [1] - 42:10
**48** [1] - 42:11
**4:28** [1] - 48:24

**5**

**5** [1] - 31:9
**5-year** [1] - 4:2
**580** [1] - 42:12
**585** [1] - 42:12
**586** [1] - 42:12

**6**

**6** [1] - 31:9

**7**

**7** [9] - 31:16, 32:24, 32:25, 33:10, 36:6, 36:9, 36:10, 36:12

**9**

**974** [1] - 42:11

**A**

**abide** [1] - 39:21
**ability** [2] - 17:4, 22:21
**able** [10] - 13:8, 15:10, 15:25, 19:1, 19:3, 19:4, 19:24, 31:1, 48:13, 48:20
**absolute** [1] - 28:15
**absolutely** [14] - 6:14, 6:20, 9:11, 10:25, 11:4, 11:7, 11:15, 11:21, 12:3, 22:1, 27:24, 35:12, 47:25
**Absolutely** [1] - 12:25
**abstract** [2] - 21:12, 29:18
**abuse** [3] - 7:7, 33:16, 34:3
**abused** [4] - 33:1, 33:3, 33:12, 36:16
**accepting** [1] - 26:24
**access** [8] - 17:1, 18:9, 23:10, 31:1, 33:20,

35:24, 36:21, 43:25
**accessing** [1] - 16:20
**accompanied** [1] - 18:16
**according** [4] - 6:25, 44:20, 45:16, 46:8
**account** [2] - 14:11, 45:10
**accurate** [1] - 49:11
**acknowledge** [1] - 43:6
**acknowledged** [4] - 25:13, 40:20, 42:4, 45:5
**acknowledges** [1] - 44:7
**Act** [3] - 5:9, 7:15, 28:14
**act** [2] - 14:19, 41:11
**actions** [1] - 31:10
**activity** [4] - 25:11, 25:14, 27:11, 39:16
**actual** [1] - 12:12
**adamantly** [1] - 38:15
**add** [1] - 7:12
**additional** [4] - 5:6, 29:5, 39:4, 40:23
**address** [8] - 15:10, 23:19, 31:22, 34:8, 35:7, 35:20, 37:6, 40:24
**addressed** [2] - 45:4, 47:4
**addresses** [1] - 47:6
**addressing** [2] - 11:7, 15:17
**adequate** [1] - 44:14
**adhere** [1] - 39:19
**admission** [2] - 25:13, 27:1
**advantage** [1] - 28:5
**advertises** [1] - 26:23
**advise** [1] - 12:7
**advised** [1] - 12:6
**affecting** [1] - 19:14
**affixed** [1] - 49:12
**afraid** [2] - 21:12, 38:6
**afternoon** [4] - 2:5, 2:6, 36:10, 36:11
**age** [1] - 19:23
**Agent** [1] - 2:4
**aggravating** [5] - 25:16, 26:1, 38:19, 38:23, 39:1
**aggravation** [3] - 25:21, 26:20, 29:13
**ago** [2] - 15:7, 39:4
**agree** [5] - 10:13, 10:15, 35:12, 37:19, 39:7
**agreement** [2] - 18:5, 20:14
**agrees** [1] - 14:19
**ahead** [1] - 20:25
**aim** [1] - 46:22

**alcohol** [1] - 7:7
**alike** [1] - 39:9
**allegation** [1] - 44:12
**allegations** [8] - 39:11, 39:12, 39:14, 45:14, 45:16, 46:9, 47:10
**allege** [2] - 19:16, 27:13
**alleged** [9] - 14:21, 20:11, 37:21, 38:21, 39:15, 44:8, 45:23, 45:25, 46:4
**allegedly** [2] - 14:23, 15:17
**alleging** [1] - 3:22
**allow** [3] - 10:7, 16:3, 16:23
**allowed** [2] - 16:5, 35:22
**allowing** [1] - 32:9
**almost** [4] - 20:15, 20:17, 36:20, 39:2
**alter** [1] - 46:25
**AMERICA** [1] - 1:4
**analysis** [3] - 20:17, 42:14, 46:25
**angry** [2] - 6:8, 11:16
**Anne** [1] - 18:6
**announced** [1] - 44:4
**answer** [1] - 16:13
**answering** [1] - 22:10
**anxiety** [1] - 44:1
**appeal** [2] - 3:11, 5:14
**appearance** [2] - 7:8, 42:2
**Appearances** [1] - 1:15
**appeared** [1] - 6:22
**appearing** [1] - 25:23
**applicable** [1] - 41:23
**applies** [1] - 7:17
**apply** [1] - 40:7
**appreciate** [4] - 34:4, 41:19, 43:21, 48:3
**approach** [1] - 12:19
**appropriate** [3] - 4:16, 17:10, 47:8
**area** [6] - 6:23, 6:24, 18:6, 23:23, 25:23, 27:7, 29:22, 30:1, 30:20, 32:9
**argue** [1] - 16:15
**argued** [1] - 44:22
**arguing** [1] - 37:8
**argument** [6] - 6:19, 9:5, 9:15, 20:20, 38:2, 39:24, 40:7, 40:13, 41:14
**arguments** [1] - 5:1
**arises** [1] - 31:20
**arrest** [2] - 40:4, 44:18
**arrested** [1] - 18:24
**Arundel** [1] - 18:6

**ASAP** [1] - 17:8
**aspect** [1] - 38:7
**assertion** [1] - 39:8
**assess** [1] - 45:8
**assessment** [1] - 13:19
**assiduously** [1] - 47:4
**assigned** [1] - 2:3
**assist** [1] - 15:10
**assistant** [1] - 48:14
**assume** [1] - 33:4
**assuming** [1] - 18:14
**assure** [5] - 4:21, 42:2, 42:8, 43:3, 47:19
**assuring** [1] - 46:13
**attempt** [1] - 40:17
**attend** [2] - 29:25, 41:20
**attended** [3] - 25:25, 30:1, 30:10
**attending** [1] - 30:9
**attention** [1] - 47:24
**Attia** [1] - 10:18
**attorney** [2] - 18:16, 44:22
**August** [2] - 1:10, 49:8
**available** [1] - 48:21
**awaiting** [1] - 15:5
**aware** [3] - 22:21, 33:1, 33:11

**B**

**back-side** [1] - 38:9
**background** [4] - 4:18, 24:7, 24:15, 24:16
**bad** [4] - 10:9, 39:22
**Bail** [1] - 5:9
**bail** [2] - 33:13, 33:24
**balance** [1] - 20:8
**Baltimore** [14] - 1:11, 1:24, 6:23, 17:9, 17:17, 18:6, 25:25, 26:1, 30:19, 36:14, 36:15
**bank** [2] - 14:11, 21:10
**bars** [1] - 31:14
**based** [1] - 8:17
**becomes** [3] - 14:15, 36:18, 39:18
**began** [1] - 45:20
**begging** [2] - 26:12, 26:15
**behalf** [2] - 2:11, 43:7
**Behalf** [2] - 1:16, 1:18
**behavior** [3] - 29:7, 32:17, 47:15
**behind** [1] - 31:14
**below** [1] - 14:3
**bench** [4] - 12:19, 13:2, 13:7, 45:5
**best** [1] - 28:13

**better** [1] - 9:1
**between** [4] - 8:2, 9:21, 17:18, 20:15
**big** [1] - 9:14
**bit** [1] - 41:5
**blocking** [1] - 22:22
**boils** [1] - 16:9
**bond** - 33:1, 33:13
**bottom** [1] - 39:18
**boy** [1] - 26:17
**boys** [14] - 8:5, 8:6, 8:13, 23:16, 23:24, 25:19, 26:8, 26:21, 28:24, 29:25, 30:8, 30:19, 30:20, 34:25
**break** [1] - 40:4
**breaking** [1] - 26:11
**Brian** [1] - 17:22
**brief** [2] - 35:10, 37:4
**briefly** [1] - 9:8
**bring** [1] - 47:24
**burden** [11] - 5:12, 5:14, 5:15, 10:16, 11:23, 11:24, 31:7, 40:13, 42:15
**button** [1] - 18:8

---

# C

**calculated** [1] - 46:11
**calculating** [2] - 46:1, 47:12
**California** [1] - 29:18
**callous** [2] - 26:8, 26:13
**Canada** [1] - 29:18
**candid** [1] - 23:15
**candidly** [1] - 48:18
**cannot** [4] - 13:18, 15:14, 23:9, 32:11
**capable** [2] - 22:20, 39:25
**car** [1] - 14:11
**care** [5] - 21:19, 22:7, 23:20, 44:14, 44:23
**carry** [2] - 3:24, 4:5
**carve** [9] - 15:3, 15:4, 16:2, 16:12, 18:19, 21:14, 39:18, 41:7, 41:8
**Case** [1] - 49:8
**CASE** [1] - 1:5
**case** [17] - 2:20, 3:21, 5:9, 10:18, 11:11, 24:9, 29:21, 30:3, 30:7, 41:6, 41:21, 44:3, 45:13, 46:3, 47:11, 48:5
**cases** [11] - 2:22, 8:14, 22:25, 23:6, 24:8, 24:14, 37:10, 38:14, 39:8, 47:9
**caused** [2] - 30:25, 32:22

**causing** [1] - 22:13
**CDF** [5] - 21:25, 22:3, 22:6, 22:9, 47:4
**center** [4] - 13:17, 19:2, 20:10, 21:13
**Center** [1] - 20:19
**certain** [1] - 16:21
**certainly** [2] - 14:13, 48:16
**CERTIFICATE** [1] - 49:4
**certify** [2] - 49:6, 49:9
**chairing** [1] - 48:13
**challenging** [1] - 5:19
**chambers** [1] - 48:10
**change** [1] - 4:9
**character** [1] - 42:21
**characteristics** [4] - 7:4, 24:16, 27:6, 42:20
**charge** [1] - 14:17
**charged** [3] - 3:24, 14:7, 42:19
**charges** [3] - 3:22, 4:5, 43:1
**chats** [2] - 25:18, 28:4
**check** [3] - 19:25, 20:17, 34:7
**checks** [1] - 19:11
**Chesapeake** [1] - 24:10
**child** [7] - 3:23, 23:7, 32:16, 33:20, 33:21, 39:8, 46:3
**children** [8] - 23:16, 31:12, 32:10, 33:15, 33:19, 33:22, 33:24, 34:4
**children's** [1] - 33:25
**chilling** [2] - 26:5, 45:15
**circle** [1] - 31:15
**Circuit** [2] - 42:11, 42:12
**circumscribed** [1] - 35:14
**circumstance** [2] - 45:9, 47:1
**circumstances** [6] - 7:1, 25:5, 42:19, 45:11, 46:22, 47:8
**cite** [2] - 42:10, 43:4
**cited** [2] - 38:25, 47:9
**cites** [1] - 37:9
**City** [3] - 6:23, 26:1, 30:20
**city** [1] - 17:15
**civics** [1] - 35:13
**claim** [1] - 46:24
**claims** [1] - 8:7
**clairvoyant** [1] - 22:19
**clamoring** [1] - 39:22
**clarify** [2] - 10:25, 27:13
**clear** [14] - 5:17, 5:22,

6:16, 10:19, 22:7, 23:15, 23:17, 28:25, 31:8, 35:18, 36:8, 42:16, 43:14, 47:18
**clearly** [5] - 8:8, 8:10, 10:21, 25:10, 28:17
**CLERK** [1] - 12:21
**closer** [2] - 36:17, 36:19
**Code** [1] - 7:14
**coercion** [1] - 3:23
**cold** [1] - 26:7
**combination** [2] - 43:3, 47:19
**comfort** [2] - 28:10, 34:1
**comfortable** [2] - 16:10, 16:24
**comments** [4] - 9:5, 24:2, 29:23, 32:19
**commit** [1] - 31:13
**committee** [1] - 48:12
**common** [1] - 20:20
**communicate** [1] - 14:20
**communicating** [1] - 29:3
**communication** [1] - 19:20
**communications** [2] - 26:7, 29:9
**community** [23] - 4:22, 5:23, 5:24, 6:13, 7:6, 7:10, 8:12, 14:2, 14:15, 19:14, 21:17, 30:9, 31:8, 33:24, 35:20, 37:25, 41:9, 42:9, 42:22, 42:23, 43:4, 47:19
**compared** [1] - 40:16
**complete** [2] - 20:17, 49:11
**components** [1] - 44:11
**computer** [2] - 25:10, 39:4
**concern** [8] - 4:24, 23:14, 23:17, 23:19, 23:20, 23:25, 34:5, 46:14
**concerned** [3] - 2:21, 10:1, 42:4
**concerning** [1] - 7:8
**concerns** [15] - 3:18, 6:3, 6:4, 6:15, 6:19, 8:7, 19:13, 21:11, 22:4, 22:14, 30:2, 30:11, 32:19, 32:23
**conclude** [1] - 47:16
**conclusion** [1] - 48:24
**condensed** [1] - 17:15
**condition** [5] - 7:5, 43:2, 44:20, 45:7, 47:18
**conditions** [8] - 4:21,

**conduct** [16] - 7:7, 25:15, 25:17, 25:20, 28:3, 28:19, 28:22, 28:23, 29:6, 29:11, 29:21, 32:22, 38:19, 40:18, 41:25, 46:14
**conducting** [1] - 3:2
**conducts** [1] - 38:24
**conference** [2] - 13:2, 48:5
**confident** [1] - 15:25
**confused** [1] - 3:5
**confusion** [1] - 3:2
**Congress** [3] - 39:3, 43:18, 44:5
**connection** [1] - 24:5
**conniving** [2] - 46:1, 47:12
**consider** [13] - 3:6, 5:7, 6:25, 8:23, 30:13, 30:23, 42:18, 43:14, 43:17, 43:18, 43:19, 44:5
**consideration** [7] - 6:9, 10:6, 13:14, 21:9, 33:11, 42:6, 47:8
**considered** [1] - 6:11
**considering** [1] - 45:8
**consistent** [1] - 28:1
**constitute** [2] - 47:1, 49:9
**contact** [5] - 30:6, 31:2, 33:19, 40:18, 41:10
**contacted** [1] - 11:9
**contacting** [1] - 29:19
**content** [1] - 26:22
**context** [2] - 9:2, 9:3
**contrary** [2] - 44:15, 45:3
**controlled** [1] - 19:23
**controlling** [1] - 20:2
**convicted** [5] - 4:1, 23:2, 35:15, 35:16, 43:13
**convince** [1] - 31:8
**convincing** [7] - 5:17, 5:22, 6:16, 10:19, 35:19, 42:16, 47:18
**cooperate** [1] - 16:6
**Corn** [1] - 2:5
**correct** [2] - 4:23, 5:25
**correlation** [1] - 10:3
**Coulson** [8] - 3:3, 3:6, 3:8, 3:12, 25:9, 27:10, 45:24, 47:9
**Coulson's** [2] - 4:8, 47:6
**counsel** [4] - 2:9, 3:1, 3:15, 10:13, 15:10, 20:15, 20:22, 23:18,

27:7, 29:16, 37:19, 38:13, 38:24, 45:4
**counsel's** [4] - 37:7, 38:2, 38:3, 39:16
**counseling** [1] - 31:21
**counties** [1] - 18:7
**country** [1] - 16:18
**countryside** [2] - 36:13, 36:15
**counts** [2] - 3:24, 4:5
**Counts** [2] - 4:2, 4:3
**County** [10] - 6:23, 17:9, 17:17, 18:6, 25:25, 30:19, 36:14, 36:15
**county** [1] - 36:15
**couple** [2] - 26:6, 37:6
**course** [5] - 2:21, 5:9, 28:15, 40:5, 41:18
**COURT** [64] - 1:1, 2:7, 2:13, 3:10, 5:3, 5:21, 6:1, 6:7, 6:14, 6:25, 7:13, 7:16, 7:18, 7:20, 7:25, 8:14, 8:21, 9:4, 9:6, 10:22, 11:1, 11:5, 11:8, 11:11, 11:14, 11:17, 11:19, 11:23, 12:2, 12:5, 12:15, 12:23, 13:1, 13:4, 13:23, 20:22, 20:25, 21:21, 27:12, 34:10, 34:15, 34:19, 35:9, 35:11, 36:2, 36:4, 36:7, 36:11, 36:23, 37:2, 37:5, 39:7, 39:11, 40:6, 40:11, 40:20, 41:15, 41:18, 48:1, 48:7, 48:12, 48:16, 48:19, 48:23
**Court** [59] - 5:5, 5:7, 6:4, 6:11, 8:8, 8:10, 9:20, 10:4, 10:7, 10:15, 13:3, 13:8, 13:20, 14:3, 14:5, 15:3, 15:6, 15:25, 16:2, 16:6, 16:7, 16:9, 17:21, 18:23, 19:10, 19:17, 19:25, 20:12, 21:5, 21:9, 21:14, 21:16, 21:17, 22:5, 22:11, 24:23, 28:10, 28:16, 30:13, 30:23, 32:5, 32:18, 34:9, 35:8, 36:24, 37:14, 39:18, 41:14, 41:24, 42:7, 42:18, 44:22, 46:15, 48:1, 48:6, 49:18
**court** [5] - 2:16, 2:24, 7:8, 10:24, 41:20
**Court's** [7] - 4:20, 6:9, 6:20, 8:10, 20:13, 31:6, 37:25
**Courthouse** [1] - 1:23
**cover** [1] - 34:13

**COVID** [1] - 32:4
**COVID-19** [1] - 2:22
**CP** [5] - 20:3, 37:10, 38:14, 39:3, 39:5
**CRAWFORD** [32] - 2:10, 3:9, 9:8, 10:25, 11:4, 11:6, 11:10, 11:13, 11:15, 11:18, 11:21, 12:1, 12:3, 12:7, 12:19, 12:25, 13:6, 13:25, 20:23, 21:1, 35:5, 35:10, 37:3, 37:6, 39:10, 39:13, 40:9, 40:12, 40:22, 41:16, 47:25, 48:2
**Crawford** [9] - 1:18, 2:10, 9:7, 13:5, 22:9, 40:6, 45:23, 46:23, 48:20
**create** [1] - 26:22
**credible** [1] - 8:7
**Creek** [1] - 47:8
**crime** [17] - 7:2, 9:12, 9:17, 10:10, 10:23, 11:8, 14:18, 15:1, 20:10, 21:8, 29:10, 40:14, 45:22, 45:25, 46:12, 46:17
**crimes** [12] - 12:13, 14:7, 14:16, 15:17, 20:11, 25:6, 31:13, 33:22, 41:2
**CRIMINAL** [1] - 1:5
**criminal** [4] - 7:7, 27:9, 42:22, 46:21
**Criminal** [1] - 2:3
**crisis** [1] - 47:22
**criteria** [2] - 9:19, 43:17
**critical** [1] - 30:21
**critically** [1] - 30:12
**cross** [1] - 12:12
**crucial** [1] - 43:2
**crying** [1] - 26:18
**CTF** [1] - 24:10
**curious** [1] - 40:6
**current** [1] - 32:8
**custodians** [1] - 28:10
**custody** [2] - 32:7, 34:1
**cut** [1] - 10:22
**cymbals** [1] - 39:22

**D**

**dad** [4] - 16:5, 17:1, 18:2, 18:3
**damage** [1] - 33:21
**danger** [24] - 5:1, 5:17, 5:22, 6:12, 6:16, 6:21, 7:10, 8:12, 9:19, 10:12, 10:20, 14:1, 14:7, 28:11, 30:2, 30:11, 30:14, 30:23, 31:7, 35:19, 42:17, 42:23, 45:12

**dark** [1] - 35:3
**data** [1] - 33:17
**date** [4] - 25:10, 25:14, 25:24, 48:20
**DC** [1] - 24:10
**de** [6] - 3:13, 4:19, 5:7, 5:11, 10:14, 41:25
**deal** [1] - 31:22
**dealing** [2] - 8:5, 14:16
**decades** [1] - 39:3
**decision** [2] - 20:14, 42:11, 42:12
**defendant** [65] - 3:11, 3:21, 5:16, 6:21, 8:7, 8:11, 11:11, 18:2, 19:3, 23:1, 23:10, 23:12, 23:21, 23:22, 24:19, 24:21, 25:11, 25:12, 25:17, 26:2, 26:6, 26:7, 26:21, 27:1, 27:8, 27:17, 28:2, 28:22, 29:4, 29:15, 29:19, 29:21, 30:8, 30:24, 30:25, 31:1, 31:7, 31:18, 31:23, 31:25, 32:3, 32:4, 32:5, 32:16, 32:21, 35:7, 35:13, 39:19, 39:21, 40:13, 42:4, 42:17, 42:20, 42:21, 43:5, 43:12, 44:10, 44:18, 45:4, 45:12, 45:19, 46:2, 46:13, 46:17, 46:19
**Defendant** [2] - 1:7, 1:18
**defendant's** [15] - 3:18, 5:18, 12:16, 22:3, 22:12, 24:2, 24:7, 24:16, 25:15, 25:22, 26:18, 32:7, 32:20, 32:22, 44:22
**defendants** [2] - 24:9, 24:24
**defense** [8] - 5:18, 10:16, 10:18, 21:24, 23:18, 27:6, 29:16, 38:19
**deficiency** [1] - 22:7
**degree** [1] - 24:20
**Delta** [1] - 2:22
**demonstrate** [2] - 5:22, 10:19
**demonstrated** [2] - 19:13, 44:14
**denial** [1] - 47:21
**denied** [1] - 3:12
**deny** [1] - 47:20
**department** [1] - 19:24
**Department** [8] - 16:3, 16:12, 19:6, 19:10, 37:8, 37:11, 37:15, 39:24
**Department's** [2] - 37:14, 37:17

**departments** [1] - 16:17
**described** [1] - 47:12
**deserves** [1] - 28:17
**desires** [2] - 8:2, 21:16
**detail** [1] - 17:2
**details** [1] - 44:9
**detained** [8] - 24:9, 24:20, 24:24, 31:10, 31:14, 32:12, 32:14, 47:5
**Detention** [3] - 1:10, 20:19, 24:10
**detention** [20] - 2:6, 3:13, 4:6, 4:10, 5:20, 7:24, 10:15, 12:16, 13:17, 19:2, 19:18, 20:10, 21:13, 21:17, 25:7, 35:11, 41:9, 41:23, 43:13, 47:3
**determination** [7] - 5:8, 6:20, 8:11, 8:17, 31:6, 37:25, 42:10
**determine** [3] - 4:20, 16:20, 42:7
**determined** [1] - 17:10
**determines** [1] - 28:16
**device** [10] - 16:4, 16:25, 17:3, 17:11, 18:12, 19:11, 19:12, 23:10, 31:1
**devices** [13] - 12:22, 12:24, 16:19, 17:5, 17:9, 17:16, 19:23, 22:20, 23:4, 23:6, 23:8, 23:13, 36:21
**diagnosis** [3] - 13:16, 13:17
**different** [1] - 40:24
**differently** [1] - 47:17
**difficult** [1] - 30:16
**diminishing** [3] - 11:16, 11:17, 15:1
**directed** [1] - 44:5
**disagree** [2] - 38:15, 39:13
**disclosed** [1] - 44:18
**disconcerting** [1] - 26:5
**discussed** [1] - 7:3
**discussions** [3] - 19:1, 20:15, 29:8
**disputing** [1] - 13:16
**disregarding** [1] - 33:25
**disrespect** [1] - 6:7
**disrespectful** [1] - 37:22
**distance** [1] - 17:18
**district** [1] - 10:24
**DISTRICT** [2] - 1:1, 1:1
**disturbing** [2] - 45:24, 46:5
**DIVISION** [1] - 1:2

**doable** [1] - 46:22
**docket** [1] - 3:3
**doctor** [2] - 44:19, 45:7
**done** [10] - 20:3, 20:4, 20:5, 20:18, 25:10, 35:3, 35:22, 35:25, 37:9
**doubtedly** [1] - 19:4
**down** [5] - 15:14, 16:9, 17:13, 19:1, 26:11
**drop** [2] - 24:25, 25:1
**drop-off** [1] - 24:25
**drug** [2] - 7:7, 14:8
**due** [1] - 2:22
**during** [4] - 18:20, 19:18, 27:16, 32:3
**duty** [1] - 20:16

**E**

**earliest** [1] - 27:23
**easy** [5] - 15:3, 33:19, 35:23, 40:1, 40:2
**ECF** [3] - 4:11, 44:17, 47:6
**effect** [2] - 20:13, 37:10
**effective** [3] - 21:3, 37:9
**efforts** [1] - 45:1
**either** [2] - 21:17, 24:9
**electronic** [13] - 12:23, 16:4, 16:18, 16:19, 16:24, 17:9, 17:11, 18:12, 19:11, 19:12, 19:22, 31:1
**elephant** [1] - 39:15
**elevates** [1] - 29:12
**ELH-21-0161** [1] - 49:8
**ELH-21-161** [2] - 1:6, 2:3
**Ellen** [1] - 1:12
**emotional** [1] - 32:6
**empathize** [1] - 37:22
**emphasizing** [1] - 32:21
**employment** [1] - 7:5
**enacted** [2] - 39:3, 39:4
**end** [1] - 19:5
**ended** [1] - 29:3
**endure** [1] - 33:22
**engage** [4] - 28:22, 29:11, 46:13, 47:13
**engaged** [5] - 25:11, 25:13, 25:18, 27:17, 28:3
**engaging** [1] - 28:4
**ensure** [1] - 16:8
**enticement** [1] - 3:23
**equation** [1] - 20:8
**equivalent** [1] - 33:25
**especially** [4] - 26:5, 28:17, 28:18, 32:3
**Esquire** [2] - 1:16, 1:18

**essentially** [5] - 3:11, 3:12, 13:15, 41:22, 46:8
**establish** [1] - 42:16
**established** [1] - 47:18
**establishes** [1] - 35:18
**et** [1] - 5:10
**evaluating** [1] - 30:14
**evaluation** [1] - 15:7
**evidence** [24] - 5:5, 5:6, 5:17, 5:22, 6:16, 7:3, 10:19, 14:5, 15:21, 25:8, 25:9, 26:24, 27:4, 28:1, 31:8, 35:19, 38:11, 38:14, 38:16, 39:17, 41:16, 42:16, 42:19, 47:18
**evil** [1] - 26:13
**exact** [3] - 8:12, 29:22, 30:9
**exactly** [3] - 11:6, 30:22, 31:5
**examine** [1] - 12:12
**example** [6] - 6:5, 9:22, 11:8, 19:17, 20:2, 39:1
**except** [1] - 14:6
**exceptional** [3] - 22:14, 45:9, 47:1
**exchanged** [2] - 26:7, 29:9
**exchanges** [1] - 26:7
**excuse** [1] - 20:22
**executed** [1] - 27:15
**existing** [1] - 5:19
**exists** [1] - 17:12
**expect** [1] - 48:16
**experience** [1] - 45:17
**experienced** [1] - 32:15
**explaining** [1] - 28:13
**explicit** [2] - 25:20, 26:10
**exploit** [1] - 34:3
**exploitation** [3] - 3:22, 39:8, 41:3
**exploited** [1] - 33:12
**exposed** [2] - 32:16, 35:1
**exposing** [1] - 29:1
**expressed** [1] - 16:6
**extensive** [3] - 14:11, 22:2, 32:19
**extent** [4] - 8:22, 32:2, 44:12, 47:22
**extort** [1] - 26:3
**extorted** [2] - 30:16, 31:23
**extorting** [1] - 27:20, 28:5, 29:4
**extortion** [2] - 46:8, 46:9
**extraordinary** [1] - 14:6

**extremely** [2] - 46:1, 46:11

## F

**F.2d** [1] - 42:12
**F.Appx** [1] - 42:10
**faced** [1] - 24:14
**Facility** [1] - 24:10
**fact** [20] - 4:19, 15:20, 17:5, 17:20, 20:7, 21:2, 21:8, 22:24, 27:2, 31:24, 37:9, 38:3, 38:4, 38:10, 38:11, 38:17, 44:16, 45:6, 47:11, 47:17
**factor** [3] - 9:25, 13:14, 43:25
**factors** [15] - 6:11, 7:13, 8:3, 8:16, 8:17, 11:3, 25:4, 35:7, 40:23, 40:25, 42:13, 42:18, 44:4, 44:6, 45:10
**fail** [2] - 39:6, 41:7
**failure** [1] - 47:23
**fairly** [1] - 20:20
**fairness** [1] - 10:2
**fake** [1] - 33:8
**family** [8] - 7:5, 8:23, 18:25, 26:19, 30:25, 31:3, 42:21, 43:7
**far** [17] - 9:19, 9:20, 10:1, 10:16, 12:14, 13:10, 15:9, 19:5, 20:11, 24:1, 27:22, 38:5, 38:23, 39:6, 39:14, 46:7, 47:3
**far-away** [1] - 46:7
**fashion** [1] - 21:14
**father's** [1] - 17:25
**favor** [3] - 4:6, 25:7, 47:2
**FBI** [1] - 2:4
**FCRR** [1] - 1:23
**fear** [3] - 6:18, 8:7, 32:8
**fears** [1] - 6:19
**features** [1] - 14:6
**federal** [2] - 16:18, 41:5
**feelings** [2] - 37:24, 43:19
**female** [3] - 28:3, 29:2, 47:13
**few** [1] - 4:16
**filed** [1] - 4:14
**finally** [1] - 37:11
**financial** [1] - 7:5
**first** [11] - 3:24, 5:19, 9:6, 13:6, 17:2, 21:25, 23:12, 25:17, 37:6, 44:7, 44:24
**first-time** [1] - 44:7

**five** [1] - 48:21
**Five** [1] - 4:3
**flee** [2] - 10:20, 13:22
**flight** [4] - 4:24, 40:8, 40:9, 42:5
**floating** [1] - 18:10
**Floor** [1] - 1:23
**focus** [1] - 44:4
**focused** [1] - 5:1
**FOR** [1] - 1:1
**force** [2] - 26:22, 29:4
**foregoing** [1] - 49:9
**forensics** [1] - 25:10
**forthcoming** [1] - 23:14
**forum** [1] - 30:18
**forward** [1] - 11:25
**fought** [1] - 46:23
**four** [3] - 29:13, 38:23, 48:7
**Four** [1] - 4:2
**Fourth** [3] - 1:23, 42:11, 42:12
**fourth** [1] - 26:20
**frankly** [3] - 15:4, 20:14, 45:23
**free** [1] - 35:20
**freed** [1] - 33:13
**freedom** [1] - 32:9
**friends** [1] - 26:19
**frightening** [1] - 43:16
**front** [1] - 14:3
**fully** [2] - 2:17, 16:6
**future** [1] - 29:6

## G

**g)(4** [1] - 6:10
**gallery** [1] - 2:8
**game** [1] - 13:9
**gather** [1] - 6:1
**general** [1] - 10:4
**generally** [1] - 46:21
**geographic** [2] - 6:24, 29:22
**germane** [1] - 31:5
**Germany** [1] - 29:19
**girl** [1] - 25:18
**given** [3] - 31:10, 42:25, 43:8
**God** [1] - 35:22
**gotcha** [1] - 48:15
**Government** [1] - 1:16
**government** [22] - 5:21, 11:24, 12:11, 12:20, 14:13, 14:19, 15:19, 15:21, 15:22, 19:13, 20:15, 27:13, 30:13, 31:6, 35:18, 38:10, 39:20, 40:20, 42:3,

42:16, 44:6, 47:17
**government's** [11] - 4:25, 5:12, 10:8, 13:23, 23:20, 29:11, 36:25, 37:8, 40:13, 45:13, 47:11
**grabbed** [1] - 18:24
**graduate** [1] - 25:22
**graphic** [2] - 26:3, 26:9, 28:6
**grave** [1] - 46:15
**great** [5] - 17:2, 17:18, 20:21, 32:15, 36:5
**ground** [1] - 44:23
**grounds** [1] - 47:15
**guarantee** [6] - 16:13, 19:7, 22:22, 23:9, 30:25, 32:11
**guaranteed** [1] - 19:7
**guardians** [1] - 7:23
**gun** [1] - 21:10

## H

**half** [1] - 27:25
**hand** [1] - 38:22
**handle** [2] - 13:17, 21:25
**handled** [1] - 24:4
**handling** [1] - 22:3
**hands** [1] - 30:6
**hands-on** [1] - 30:6
**hard** [2] - 18:22, 46:23
**hat** [2] - 43:8, 43:10
**health** [13] - 3:18, 3:19, 15:8, 19:4, 21:19, 22:4, 24:3, 44:18, 44:19, 46:20, 46:25, 47:7
**hear** [3] - 36:18, 39:21, 44:25
**heard** [10] - 7:24, 9:8, 10:23, 11:1, 22:15, 28:15, 35:12, 43:7, 43:8, 43:21
**hearing** [18] - 2:24, 3:2, 3:3, 3:5, 4:10, 7:24, 9:1, 9:10, 10:14, 12:10, 12:16, 13:10, 14:3, 16:11, 34:4, 35:11, 43:13
**heart** [1] - 36:17
**heightened** [1] - 38:19
**heightens** [1] - 38:6
**help** [2] - 9:9, 15:10
**hereby** [1] - 49:6
**hereunto** [1] - 49:12
**hi** [2] - 34:17, 34:21
**hiding** [1] - 23:6
**high** [3] - 33:18, 38:15, 39:6
**himself** [2] - 25:22, 45:6

**history** [13] - 7:4, 7:7, 7:8, 21:5, 24:7, 24:15, 27:6, 27:9, 42:20, 42:22, 44:11, 46:20, 46:21
**Hollander** [1] - 1:12
**hollow** [2] - 24:13, 24:23
**home** [9] - 14:9, 15:5, 16:5, 16:20, 16:23, 18:13, 18:20, 35:25, 41:9
**homes** [1] - 17:18
**honest** [1] - 12:16
**Honor** [33] - 3:9, 5:2, 5:15, 6:10, 7:12, 8:19, 12:8, 12:19, 12:21, 13:6, 13:9, 15:18, 18:18, 20:1, 21:1, 21:23, 22:24, 25:5, 25:16, 27:4, 27:16, 28:20, 31:21, 34:6, 34:12, 34:17, 36:3, 36:6, 37:1, 41:17, 48:4, 48:11
**Honorable** [1] - 1:12
**hope** [3] - 24:21, 43:10, 44:25
**horrific** [1] - 39:15
**hours** [1] - 48:17
**house** [6] - 14:24, 17:24, 17:25, 28:8, 40:3, 40:4
**hunted** [1] - 30:15
**hurdles** [1] - 24:13
**hurt** [3] - 33:2, 33:6, 33:7
**husband** [1] - 17:22
**hypothetical** [1] - 11:12

## I

**idea** [3] - 33:13, 36:16, 46:24
**identified** [4] - 25:14, 25:24, 30:6, 30:21
**identify** [1] - 23:12
**identifying** [1] - 29:24
**illegal** [1] - 17:6
**illustrates** [1] - 28:2
**image** [1] - 29:1
**images** [10] - 23:16, 25:19, 26:2, 26:3, 26:19, 26:24, 27:3, 27:20, 28:6, 29:5
**immediately** [2] - 17:19, 18:8
**impact** [2] - 20:12, 31:25
**imploring** [1] - 32:5
**important** [4] - 4:6, 14:18, 15:7, 18:21, 30:12, 35:6, 45:8, 46:6

**impossibility** [1] - 36:20
**impossible** [5] - 20:17, 24:12, 24:18, 24:22, 43:24
**IN** [1] - 1:1
**incapable** [1] - 22:3
**incarcerated** [2] - 6:17, 40:8
**incarceration** [1] - 3:25
**incident** [2] - 28:20, 45:20
**incidents** [1] - 27:18
**includes** [1] - 7:2
**including** [4] - 7:1, 7:4, 7:24, 42:21
**inconvenient** [1] - 24:22
**independent** [2] - 5:8, 42:9
**indicate** [7] - 14:4, 16:22, 19:16, 22:3, 22:6, 25:10, 45:2
**indicated** [7] - 4:19, 14:14, 15:6, 25:5, 27:1, 34:12, 37:11
**indicating** [2] - 19:20, 39:20
**indication** [4] - 40:1, 40:2, 40:23, 41:11
**indicted** [1] - 3:21
**individual** [3] - 25:11, 25:13, 31:12
**individuals** [1] - 40:18
**inflicted** [1] - 32:4
**information** [4] - 3:14, 10:9, 13:11
**initial** [2] - 10:16, 26:2
**innocence** [2] - 31:12, 35:15
**innocent** [3] - 32:10, 34:25, 43:12
**input** [3] - 28:17, 29:15, 30:21
**inspection** [1] - 16:22
**instance** [1] - 23:12
**instill** [1] - 32:8
**institution** [1] - 47:23
**interaction** [1] - 32:15
**interest** [1] - 8:2
**interested** [1] - 6:2
**interesting** [1] - 37:7
**internet** [21] - 16:21, 17:4, 17:16, 18:10, 22:20, 22:23, 23:3, 23:10, 33:3, 33:4, 33:5, 33:7, 33:16, 33:18, 33:20, 35:24, 36:21, 39:2, 41:9, 43:25, 46:12
**internet-capable** [1] -

22:20
**internet-monitoring** [1] - 23:3
**interplay** [4] - 8:2, 8:16, 9:21, 10:1
**interrupt** [1] - 35:5
**investigation** [2] - 27:22, 29:24
**involved** [1] - 27:21
**involving** [2] - 10:24, 39:8
**isolated** [3] - 27:18, 45:20
**issue** [15] - 4:24, 5:4, 9:9, 13:17, 14:15, 15:13, 15:18, 15:24, 19:22, 30:23, 37:23, 40:8, 40:9, 40:11, 44:19
**issued** [1] - 3:4
**issues** [6] - 3:18, 15:11, 18:15, 19:9, 22:4, 24:14
**item** [1] - 24:1
**itself** [2] - 13:12

## J

**jail** [4] - 9:24, 33:23, 40:5, 40:25
**James** [2] - 1:18, 2:10
**jeopardize** [1] - 31:11
**job** [5] - 22:18, 28:13, 35:14, 37:14, 38:22
**joined** [1] - 2:4
**Jr** [1] - 1:18
**judge** [5] - 2:10, 9:8, 9:11, 35:5, 48:2
**Judge** [13] - 1:12, 3:3, 3:6, 3:8, 3:11, 4:8, 12:3, 25:8, 27:10, 37:3, 45:24, 47:6, 47:9
**judge's** [1] - 41:23
**Judson** [2] - 1:16, 2:4
**July** [1] - 3:4
**Junior** [1] - 2:11
**jurisdictions** [1] - 46:7
**justified** [1] - 22:15
**justify** [1] - 22:12

## K

**Kansas** [1] - 30:18
**keep** [3] - 34:2, 34:18, 41:13
**kept** [2] - 40:25, 41:9
**kid** [1] - 10:7
**kids** [2] - 34:2, 35:22
**kind** [9] - 14:10, 19:5, 19:19, 20:3, 20:14, 24:8,

24:9, 46:14, 47:15
**kinds** [2] - 24:8, 46:21
**knowing** [1] - 31:2
**knows** [2] - 14:5, 35:22

## L

**lack** [2] - 44:13, 46:21
**laid** [1] - 10:18
**large** [2] - 14:11, 36:14
**last** [4] - 16:11, 22:25, 28:11, 37:3
**late** [1] - 48:8
**law** [1] - 11:20
**lawyer** [1] - 18:25
**lead** [2] - 10:4, 33:8
**learned** [1] - 30:14
**learning** [1] - 31:24
**least** [7] - 3:17, 3:20, 10:16, 15:15, 15:22, 17:21, 47:3
**leave** [1] - 21:11
**leaving** [2] - 9:3, 15:4
**left** [1] - 47:11
**legitimate** [1] - 44:1
**length** [1] - 7:6
**lesson** [1] - 35:13
**letter** [1] - 34:13
**letters** [1] - 19:19
**level** [6] - 16:18, 25:17, 25:21, 26:20, 41:3, 41:5
**levels** [3] - 25:16, 29:13, 37:19
**life** [1] - 19:7
**lifelong** [1] - 32:4
**likely** [1] - 10:19
**line** [1] - 39:18
**lines** [1] - 14:24
**listening** [1] - 19:21
**litigation** [1] - 24:6
**live** [5] - 17:14, 29:18, 30:20, 32:9, 36:15
**lived** [1] - 14:9
**lives** [2] - 30:18, 33:7
**living** [4] - 18:1, 18:2, 18:5, 46:6
**local** [6] - 18:7, 25:22, 25:23, 26:16, 39:6, 46:5
**location** [2] - 17:17
**locations** [1] - 17:14
**lock** [1] - 17:4
**locking** [1] - 22:21
**Lombard** [1] - 1:24
**look** [9] - 3:17, 8:14, 37:13, 38:24, 45:11, 45:12, 45:13, 45:25, 47:10
**looked** [3] - 4:13, 4:15, 17:7

**looking** [5] - 38:8, 39:5, 42:13, 46:16
**loud** [1] - 8:3
**lower** [1] - 25:3
**lure** [1] - 33:16

## M

**ma'am** [1] - 34:16
**mad** [1] - 9:23
**magicians** [1] - 22:18
**magistrate** [2] - 14:4, 41:22
**main** [1] - 34:21
**major** [3] - 13:14, 45:1
**majority** [3] - 25:24, 41:4
**males** [1] - 25:20
**mandatory** [3] - 3:25, 4:1, 4:2
**manipulated** [1] - 46:18
**manner** [4] - 21:18, 46:3, 49:11
**Martin** [4] - 4:12, 44:17, 44:20
**Mary** [3] - 1:23, 49:6, 49:17
**MARYLAND** [1] - 1:1
**Maryland** [2] - 1:11, 1:24
**mask** [3] - 2:16, 2:18, 34:20
**masked** [2] - 2:15, 2:19
**matter** [4] - 2:5, 20:4, 49:7, 49:11
**MATTHEW** [1] - 1:6
**Matthew** [3] - 2:3, 2:11, 49:7
**maximum** [1] - 4:1
**mean** [6] - 6:7, 22:24, 26:13, 27:18, 34:19, 35:24, 40:5
**meaning** [1] - 18:1
**means** [4] - 9:17, 14:12, 16:19, 37:13
**meant** [1] - 47:11
**mechanism** [1] - 22:21
**medical** [8] - 3:15, 4:14, 13:10, 18:15, 20:12, 21:18, 44:11, 47:22
**medicine** [1] - 45:3
**meet** [4] - 14:21, 14:22, 30:18, 47:23
**meeting** [3] - 30:5, 48:7, 48:12
**meets** [1] - 9:18
**member** [1] - 8:23
**members** [2] - 41:19, 43:7

**memoranda** [1] - 24:15
**memorandum** [2] - 4:8, 4:10
**mental** [10] - 3:19, 7:5, 15:8, 22:1, 22:4, 24:3, 46:20, 46:24, 47:3, 47:24
**mentally** [1] - 20:10
**mentioned** [3] - 19:17, 42:14, 42:25
**mere** [2] - 38:3, 38:4
**merely** [1] - 39:14
**met** [1] - 31:6
**methodologies** [2] - 17:7, 20:1
**methods** [1] - 16:19
**might** [2] - 4:17, 11:2
**Mihok** [6] - 1:16, 2:4, 4:25, 6:2, 21:22, 48:19
**MIHOK** [31] - 2:2, 5:1, 5:15, 5:25, 6:6, 6:10, 6:18, 7:12, 7:14, 7:17, 7:19, 7:21, 8:4, 8:19, 8:25, 9:5, 9:7, 9:8, 21:23, 27:14, 34:12, 34:16, 34:18, 36:3, 36:5, 36:8, 36:24, 37:3, 37:6, 39:10, 39:13, 40:9, 40:12, 40:22, 41:16, 47:25, 48:2, 48:4, 48:10, 48:15, 48:18, 48:22
**mindful** [1] - 46:19
**minimum** [3] - 3:25, 4:2, 4:3
**minor** [13] - 3:23, 7:2, 7:22, 8:5, 23:16, 23:24, 25:20, 26:4, 28:17, 28:18, 29:2, 30:8
**minors** [4] - 29:21, 31:13, 33:3, 33:4
**minute** [1] - 44:25
**misunderstand** [1] - 11:19
**mitigate** [1] - 38:20
**mitigating** [1] - 44:6
**mitigation** [7] - 24:3, 24:6, 25:2, 27:7, 30:4, 30:7, 40:21
**mom** [5] - 16:5, 17:1, 17:13, 18:7, 18:13
**moment** [2] - 23:25, 34:6
**money** [2] - 17:1, 40:3
**monitor** [5] - 16:19, 17:9, 17:11, 22:19, 22:20
**monitored** [2] - 18:13, 18:14
**monitoring** [2] - 23:3, 39:25
**months** [1] - 33:3
**most** [1] - 16:17
**mother** [2] - 18:17, 34:14, 43:24
**motion** [5] - 5:13, 5:18,

**move** [3] - 13:25, 14:1, 17:16
**moving** [1] - 13:19
**MR** [63] - 2:2, 2:10, 3:9, 5:1, 5:15, 5:25, 6:6, 6:10, 6:18, 7:12, 7:14, 7:17, 7:19, 7:21, 8:4, 8:19, 8:25, 9:5, 9:7, 9:8, 10:25, 11:4, 11:6, 11:10, 11:13, 11:15, 11:18, 11:21, 12:1, 12:3, 12:7, 12:19, 12:25, 13:6, 13:25, 20:23, 21:1, 21:23, 27:14, 34:12, 34:16, 34:18, 35:5, 35:10, 36:3, 36:5, 36:8, 36:24, 37:3, 37:6, 39:10, 39:13, 40:9, 40:12, 40:22, 41:16, 47:25, 48:2, 48:4, 48:10, 48:15, 48:18, 48:22
**multiple** [5] - 3:22, 22:25, 33:3, 33:15, 44:11
**murder** [1] - 41:1
**must** [5] - 5:7, 10:18, 13:20, 41:24, 42:7, 42:9, 42:18, 43:19, 45:12

## N

**name** [1] - 30:22
**names** [1] - 33:8
**narrowed** [1] - 15:13
**nature** [20] - 6:12, 7:1, 7:9, 9:12, 9:17, 12:12, 14:6, 14:16, 20:10, 21:8, 25:4, 39:2, 40:14, 42:18, 42:22, 42:25, 44:10, 45:11, 45:22, 46:17
**near** [1] - 44:3
**necessarily** [1] - 44:1
**need** [3] - 21:2, 31:19, 47:24
**needs** [6] - 12:5, 21:16, 22:10, 32:12, 47:3, 47:24
**never** [2] - 12:15, 33:9
**new** [1] - 28:4
**nice** [1] - 2:10
**NO** [1] - 1:5
**nonetheless** [2] - 18:4, 18:11
**NORTHERN** [1] - 1:2
**note** [4] - 4:18, 14:18, 27:10, 44:15
**notes** [1] - 19:19
**noteworthy** [1] - 18:1
**nothing** [12] - 14:13, 14:24, 15:18, 19:7,

19:16, 22:2, 22:5, 22:8, 22:11, 27:25, 39:20, 40:5
**notion** [2] - 21:25, 24:18
**November** [3] - 27:14, 27:22, 45:18
**novo** [6] - 3:13, 4:19, 5:7, 5:11, 10:14, 41:25
**Number** [7] - 2:3, 32:24, 32:25, 33:10, 36:6, 36:9
**number** [5] - 18:23, 22:16, 22:17, 39:14, 44:17
**Number(s** [1] - 49:8
**numerous** [1] - 31:11

## O

**object** [2] - 9:16, 35:6
**obligation** [1] - 41:8
**obstacles** [1] - 24:13
**obtain** [1] - 18:8
**obtained** [3] - 26:3, 27:3, 27:20
**obtaining** [1] - 25:19
**obvious** [5] - 2:20, 17:20, 21:4, 21:5, 44:9
**obviously** [7] - 6:18, 7:25, 23:13, 26:1, 28:13, 37:20, 38:20
**occur** [1] - 16:17
**occurred** [5] - 18:2, 38:4, 45:25, 46:4, 46:12
**occurrence** [1] - 45:17
**OF** [4] - 1:1, 1:4, 36:10, 36:12
**offender** [1] - 44:8
**offense** [3] - 7:1, 20:3, 45:11
**offenses** [2] - 25:6, 42:19
**office** [1] - 19:3
**official** [1] - 49:10
**Official** [1] - 49:18
**often** [1] - 20:3
**old** [1] - 27:8
**once** [1] - 26:8
**one** [32] - 2:16, 3:17, 4:15, 6:11, 12:17, 17:8, 18:6, 18:23, 21:10, 21:11, 22:16, 26:17, 27:7, 28:14, 28:20, 28:21, 29:13, 30:5, 33:25, 34:14, 36:12, 38:9, 38:13, 41:6, 42:1, 43:24, 45:16, 45:23, 46:15, 47:8, 47:11
**one's** [2] - 13:16, 21:9
**one-off** [1] - 45:16

**one-time** [1] - 28:20
**ones** [1] - 5:19
**ongoing** [1] - 29:7
**online** [12] - 14:24, 15:16, 15:23, 15:25, 16:10, 16:13, 23:19, 25:18, 28:4, 30:15, 30:18, 41:3
**Open** [1] - 13:3
**open** [2] - 2:24, 17:21
**opinion** [5] - 3:4, 15:3, 41:7, 46:15, 47:6
**opportunity** [5] - 12:12, 31:20, 33:2, 33:5, 34:3
**opposed** [4] - 7:20, 31:9, 31:15, 33:14
**opposes** [1] - 32:6
**opposite** [2] - 38:9, 38:17
**Order** [1] - 1:10
**order** [11] - 2:6, 3:13, 4:8, 4:10, 5:20, 16:2, 18:17, 19:10, 20:6, 21:15, 41:23
**order's** [1] - 37:17
**ordered** [2] - 20:6, 37:16
**orders** [1] - 37:15
**original** [4] - 3:6, 3:12, 4:9, 39:3
**otherwise** [3] - 2:18, 2:23, 10:6
**outcome** [3] - 20:14, 21:3, 21:4
**overcome** [1] - 47:2
**own** [3] - 14:8, 25:12, 27:1

## P

**p.m** [2] - 2:1, 48:24
**Page** [1] - 42:10
**page** [1] - 4:16
**pages** [3] - 4:16, 45:2, 49:9
**pain** [1] - 32:6
**painful** [1] - 43:21
**painted** [1] - 45:15
**panic** [1] - 32:8
**paperwork** [1] - 25:2
**parameters** [1] - 43:14
**paramount** [1] - 42:6
**Parent** [1] - 34:5
**parent** [3] - 32:24, 36:6, 43:9
**PARENT** [2] - 36:10, 36:12
**parents** [3] - 7:22, 33:10, 34:7

**parole** [1] - 7:9
**part** [4] - 26:4, 37:24, 47:23
**particular** [3] - 10:5, 41:25, 45:14
**particularly** [1] - 45:23
**parties** [1] - 6:2
**parts** [1] - 13:19
**party** [1] - 28:9
**passport** [1] - 14:9
**past** [5] - 7:6, 13:20, 14:1, 15:22, 40:17
**pattern** [3] - 28:22, 28:23, 29:7
**pause** [2] - 20:24, 34:11
**payment** [1] - 26:24
**PayPal** [1] - 26:25
**pedophile** [3] - 33:13, 33:19, 34:2
**pedophiles** [1] - 33:18
**penalty** [1] - 39:4
**pending** [2] - 22:25, 40:8
**people** [7] - 2:8, 6:3, 8:22, 33:6, 43:6, 43:23, 46:18
**people's** [1] - 34:24
**perfectly** [1] - 19:24
**perhaps** [2] - 9:3, 43:16
**period** [8] - 3:25, 4:2, 18:20, 25:12, 27:11, 27:13, 27:24, 31:23
**periodic** [1] - 19:11
**periodically** [2] - 16:23, 20:4
**periods** [1] - 33:17
**persistent** [1] - 28:1
**person** [11] - 4:22, 6:12, 7:4, 7:10, 33:1, 33:11, 33:16, 42:3, 42:9, 42:23, 43:4
**personal** [5] - 6:15, 8:2, 8:23, 43:19, 44:1
**personally** [1] - 9:18
**perspective** [2] - 4:25, 29:12
**pertinent** [2] - 11:2, 42:13
**phase** [1] - 44:3
**phone** [2] - 35:24, 40:2
**phones** [1] - 41:9
**photograph** [1] - 26:10
**physical** [10] - 3:18, 7:4, 15:8, 22:1, 22:4, 44:19, 46:20, 46:24, 47:4, 47:23
**physically** [3] - 14:20, 20:9
**picked** [1] - 17:14
**pictures** [2] - 33:8, 35:2

**piggyback** [1] - 36:22
**piled** [1] - 29:14
**place** [1] - 23:4
**plan** [3] - 19:3, 36:13, 36:19
**play** [5] - 7:18, 9:25, 15:9, 21:6, 37:24
**pleaded** [1] - 26:21
**pleading** [2] - 26:9, 26:15
**plenty** [1] - 39:8
**plucking** [1] - 9:2
**point** [11] - 4:7, 14:12, 18:18, 22:5, 22:24, 28:11, 35:16, 36:12, 37:23, 43:23, 46:6
**pointed** [1] - 27:7
**points** [2] - 21:24, 47:7
**polygraph** [1] - 20:4
**pornography** [8] - 3:23, 14:17, 23:7, 33:20, 46:3, 46:10
**pornography-type** [1] - 14:17
**pose** [5] - 9:19, 10:20, 33:23, 42:17, 45:12
**posed** [4] - 5:16, 6:13, 7:11, 42:23
**poses** [5] - 6:21, 8:11, 10:11, 30:12, 42:17
**posing** [4] - 25:17, 28:3, 39:1, 47:13
**position** [4] - 9:10, 12:7, 12:11, 38:20
**possess** [3] - 14:8, 16:3, 16:24
**possibility** [1] - 31:3
**possible** [2] - 16:16, 40:25
**possibly** [2] - 19:13, 36:19
**post** [1] - 20:5
**post-trial** [1] - 20:5
**posture** [1] - 41:21
**potentially** [2] - 15:12, 15:22
**pragmatically** [1] - 15:15
**precaution** [1] - 2:23
**precautions** [1] - 18:4
**predatory** [2] - 31:10, 32:17
**prefer** [3] - 6:17, 32:13, 32:14
**preferences** [1] - 8:23
**prejudice** [1] - 47:21
**preliminarily** [1] - 2:15
**premises** [1] - 21:11
**preparation** [4] - 24:5, 24:6, 24:25, 25:1

**prepare** [1] - 24:19
**prepared** [5] - 4:12, 24:8, 24:19, 24:22, 44:17
**preparing** [1] - 15:9
**preposterous** [1] - 33:14
**present** [3] - 6:2, 7:23, 34:7
**presentation** [1] - 36:25
**presented** [4] - 5:5, 14:5, 38:16, 39:20
**presents** [1] - 44:10
**pressing** [1] - 21:23
**presumed** [1] - 43:12
**presumption** [8] - 4:5, 25:6, 35:14, 43:1, 43:2, 43:5, 47:2, 47:16
**pretrial** [2] - 20:5, 20:6
**Pretrial** [4] - 4:11, 22:17, 23:9, 23:15, 32:11, 39:25, 44:16
**pretty** [1] - 18:24
**prevent** [3] - 34:22, 36:20
**previously** [3] - 5:5, 15:17, 26:19
**prey** [1] - 32:10
**preyed** [1] - 33:15
**print** [1] - 3:16
**printed** [1] - 4:16
**private** [7] - 25:22, 25:23, 25:25, 30:1, 30:10
**probable** [1] - 16:17
**probation** [4] - 7:9, 16:17, 19:24, 22:17
**Probation** [15] - 15:4, 16:3, 16:12, 18:14, 19:6, 19:10, 23:5, 23:9, 32:11, 37:8, 37:11, 37:14, 37:15, 37:17, 39:24
**problem** [6] - 13:15, 17:5, 22:13, 37:12, 37:18, 41:10
**problems** [1] - 22:1
**procedurally** [1] - 5:18
**proceeding** [7] - 3:13, 4:20, 6:5, 10:24, 41:20, 41:25
**Proceedings** [2] - 13:3, 48:24
**proceedings** [8] - 2:1, 7:8, 7:21, 20:24, 34:11, 44:13, 49:7, 49:10
**proclivity** [1] - 23:15
**professionals** [1] - 19:4
**proffer** [4] - 14:4, 18:23, 22:2, 38:17
**proffered** [5] - 13:10, 14:14, 21:4, 23:21, 38:10
**program** [1] - 17:8

prolonged [1] - 25:12
prolonging [1] - 41:13
promptly [2] - 41:24, 42:7
proper [2] - 44:23, 45:3
proposed [2] - 28:9, 29:16
proposes [1] - 6:24
proposition [2] - 17:13, 47:9
protect [1] - 5:23
protected [1] - 34:1
protracted [1] - 28:7
prove [3] - 5:12, 5:16, 6:16
proves [1] - 33:17
provide [2] - 22:9, 29:5
provided [3] - 3:15, 26:19, 29:1
providing [1] - 22:8
provision [1] - 41:23
proximity [2] - 36:17, 38:4
pry [1] - 34:19
psychiatric [1] - 20:11
public [4] - 10:5, 10:24, 19:14, 41:19
purely [2] - 12:10, 14:24
purporting [1] - 29:22
purpose [1] - 25:19
purposes [1] - 17:20
push [1] - 18:8
pushing [1] - 18:22
put [13] - 10:9, 13:12, 14:22, 15:14, 15:15, 15:24, 18:8, 18:17, 20:6, 36:19, 38:20, 43:8, 47:17
puts [1] - 15:2

Q

quarrel [1] - 6:14
questions [2] - 36:25, 42:1
quickly [1] - 18:25
quite [4] - 9:22, 32:19, 39:9, 41:5
quote [1] - 37:11

R

Rachel [1] - 2:5
raised [1] - 15:19
random [1] - 30:17
rate [1] - 33:18
rather [2] - 9:2, 47:4
re [2] - 31:18, 31:19
re-traumatize [1] -
31:18
re-victimize [1] - 31:19
reach [4] - 19:18, 31:18, 40:18
reached [1] - 19:17
read [6] - 8:3, 8:15, 8:22, 32:18, 36:8, 45:2
reading [1] - 8:9
ready [4] - 17:13, 17:18, 18:7, 18:8
real [3] - 15:23, 19:22, 36:18
reality [1] - 23:11
realize [1] - 45:14
realized [1] - 26:8
really [14] - 9:24, 25:16, 26:13, 27:15, 28:10, 29:12, 29:19, 30:3, 35:5, 37:22, 39:1, 39:9, 46:4, 46:17
reason [7] - 2:20, 11:5, 22:14, 22:15, 34:21, 45:24
reasonable [6] - 16:15, 16:22, 18:19, 19:10, 19:24, 21:14
reasonableness [1] - 19:9
reasonably [8] - 4:21, 5:23, 10:23, 15:24, 16:10, 41:8, 42:2, 42:8
reasons [1] - 43:24
rebuttable [3] - 43:1, 43:2, 47:2
rebutted [2] - 43:5, 47:16
receipt [1] - 3:23
receive [1] - 17:4
recently [1] - 33:10
recidivism [1] - 38:15
recollection [1] - 16:14
reconsideration [1] - 3:12
reconsidered [1] - 4:9
record [8] - 7:8, 13:2, 22:2, 22:5, 22:11, 34:12, 44:8, 44:15
recorded [1] - 49:6
records [5] - 3:15, 4:14, 25:2, 44:24, 45:2
recovered [1] - 28:2
rectified [1] - 45:2
refer [1] - 34:13
reference [2] - 4:4, 4:15
reflect [1] - 44:24
Reform [1] - 5:9
regard [3] - 11:22, 23:17, 25:8
regarding [6] - 12:12, 13:11, 16:7, 29:15, 37:4,
37:10
regardless [1] - 35:24
reiterate [1] - 36:19
related [6] - 6:4, 24:2, 24:3, 24:7, 24:15, 46:13
relating [1] - 7:7
relatively [2] - 27:8, 46:20
relayed [1] - 8:8
release [24] - 4:21, 7:11, 10:24, 11:14, 21:17, 22:12, 23:2, 29:15, 31:11, 32:5, 32:6, 32:7, 32:20, 33:11, 33:14, 33:24, 36:1, 41:3, 42:2, 42:8, 42:24, 43:15, 44:23, 46:22
released [8] - 8:12, 10:17, 13:13, 23:22, 29:22, 30:12, 30:24, 31:2, 31:25, 32:13, 32:23, 33:1, 33:23, 35:20, 39:23, 41:5, 42:17, 46:14
releasing [1] - 46:2
relevance [2] - 6:3, 12:9
relevant [23] - 4:17, 6:8, 6:20, 8:10, 9:13, 9:18, 9:25, 10:4, 10:10, 10:11, 11:14, 18:14, 21:6, 24:5, 24:17, 29:16, 30:23, 31:5, 35:8, 37:23, 42:15, 44:2
reluctant [1] - 35:5
rely [2] - 22:6, 23:12
relying [1] - 13:23
remain [5] - 2:19, 5:16, 6:17, 31:10, 31:13
remained [1] - 32:14
remains [1] - 24:20
remember [2] - 12:18, 30:3
remote [2] - 17:17, 23:22
remove [2] - 2:16, 2:17, 34:19
reoffending [1] - 33:18
repeat [1] - 38:14
replacement [1] - 19:2
report [4] - 4:11, 44:16, 44:21, 48:22
Reported [1] - 1:22
Reporter [1] - 49:18
REPORTER'S [1] - 49:4
reports [8] - 20:12, 21:2, 24:2, 24:3, 24:6, 24:15, 24:19, 25:2
request [1] - 3:10
requested [1] - 16:11
required [2] - 18:12,
43:14
requires [2] - 11:20, 16:3
reschedule [1] - 48:13
reside [2] - 6:24, 28:9
residence [2] - 7:6, 23:22
residing [1] - 17:24
resorting [1] - 2:23
resources [1] - 7:5
respect [1] - 43:20
respected [1] - 8:1
response [1] - 16:16
responsibility [1] - 43:22
rest [1] - 33:6
restrictive [1] - 23:1
result [2] - 19:5, 38:1
Review [1] - 1:10
review [3] - 2:5, 41:22, 43:13
reviewed [2] - 3:14, 3:15
reviewing [1] - 5:4
rhetorically [1] - 22:10
Rights [2] - 7:15, 28:14
ring [1] - 24:4
ringing [1] - 24:12
rings [2] - 24:23, 30:2
risk [7] - 4:24, 6:21, 8:11, 30:2, 30:14, 31:7, 42:5
rob [1] - 21:10
robust [1] - 24:15
roll [1] - 9:1
roof [1] - 28:9
room [1] - 39:15
rooted [1] - 5:9
roughly [1] - 27:23
RPR [1] - 1:23
Rueben [1] - 42:11
rule [1] - 43:25
ruling [4] - 3:6, 3:11, 4:9, 48:1
rural [2] - 36:13, 36:15

S

sad [1] - 10:9
safe [3] - 30:22, 34:2, 37:25
safeguards [1] - 2:25
safer [1] - 9:24
safety [16] - 4:21, 9:19, 10:5, 10:12, 10:20, 14:1, 14:15, 18:4, 31:12, 33:23, 33:25, 36:18, 38:7, 42:8, 43:3, 47:19
savvy [1] - 46:17
saw [1] - 29:8
scared [2] - 6:8, 33:7
scars [1] - 32:4
scenario [2] - 41:3, 41:8
schizophrenic [1] - 19:20
school [4] - 25:22, 26:16, 30:10, 39:6
schools [6] - 25:23, 25:25, 29:24, 30:1, 30:10, 38:5
scope [2] - 12:8, 12:13
seal [1] - 4:14
Sealed [1] - 13:2
search [1] - 27:15
seat [3] - 2:8, 2:13
second [1] - 25:21
Section [5] - 4:5, 5:10, 7:14, 41:24, 43:4
see [14] - 2:10, 3:4, 18:16, 19:4, 20:2, 24:25, 25:1, 29:8, 34:8, 39:6, 41:2, 41:5, 41:7, 43:4
sees [1] - 24:23
selling [2] - 27:3, 27:20, 46:10
sells [1] - 26:23
send [2] - 26:10, 26:18
sending [1] - 36:1
sense [1] - 9:1
sensitive [1] - 44:10
sent [2] - 19:19, 35:2
sentence [2] - 24:6, 25:3
sentenced [1] - 23:2
sentencing [6] - 6:5, 7:20, 15:12, 24:5, 24:25, 44:2
separate [1] - 28:23
seq [1] - 5:10
serious [4] - 15:2, 37:20, 44:11, 44:18
seriousness [3] - 6:12, 7:10, 42:22
served [1] - 23:3
Services [2] - 4:11, 44:16
services [1] - 22:9
set [4] - 3:20, 14:22, 22:21, 48:10
setting [1] - 41:20
setup [1] - 16:7
several [2] - 22:25, 37:10
sex [2] - 20:3, 33:22
sexual [1] - 3:22
sexually [3] - 25:20, 33:11, 34:3
sharing [1] - 9:10

**shocked** [1] - 18:25
**show** [8] - 9:18, 13:21, 14:7, 14:15, 15:22, 15:23, 38:14, 38:16
**showing** [2] - 10:16, 31:7
**shows** [3] - 27:22, 37:16, 38:11
**side** [1] - 38:9
**signal** [1] - 17:4
**signature** [1] - 49:13
**signed** [1] - 34:5
**significant** [2] - 33:23, 44:21
**similar** [1] - 46:14
**simple** [1] - 10:17
**simply** [5] - 9:22, 11:15, 17:11, 21:8, 21:12
**sitting** [1] - 2:11
**situation** [19] - 13:13, 14:17, 14:23, 15:2, 15:4, 15:5, 15:9, 15:14, 15:15, 15:24, 18:9, 20:9, 22:22, 23:14, 33:8, 37:16, 37:20, 38:18, 40:16
**situations** [2] - 23:13, 40:17
**Six** [1] - 4:3
**sniff** [1] - 37:18
**sniffed** [2] - 23:5, 37:11
**sniffing** [1] - 39:25
**society** [2] - 10:20, 14:8
**sold** [1] - 35:4
**solicitation** [2] - 14:18, 46:9
**solicitation-type** [1] - 14:18
**soliciting** [1] - 27:19
**solves** [1] - 41:10
**someone** [9] - 14:14, 16:19, 19:8, 19:18, 25:18, 33:4, 36:4, 39:2, 40:25
**somewhat** [1] - 38:25
**son** [13] - 31:2, 31:10, 31:17, 31:19, 31:24, 32:1, 32:15, 33:12, 34:1, 34:23, 34:25, 36:16
**sons** [2] - 32:3, 34:24
**soon** [1] - 28:21
**sophisticated** [1] - 46:18
**sorry** [3] - 3:1, 20:25, 36:5
**sort** [7] - 10:2, 10:18, 21:15, 21:18, 22:22, 29:17, 47:22
**space** [2] - 17:15, 18:5
**spanned** [1] - 45:18
**speaking** [1] - 2:17

**Special** [1] - 2:4
**specific** [7] - 9:16, 10:3, 12:13, 38:25, 39:1, 39:19, 43:23
**specifically** [7] - 8:6, 10:11, 16:2, 23:16, 23:23, 29:23, 29:25
**spent** [1] - 28:2
**sports** [1] - 26:16
**stage** [6] - 3:20, 5:11, 7:18, 7:21, 7:24, 13:9
**stand** [1] - 12:4
**standard** [1] - 5:13
**standpoint** [7] - 15:7, 15:8, 16:16, 19:8, 37:20, 37:21
**start** [3] - 21:23, 31:20, 41:20
**started** [2] - 12:2, 27:22
**state** [2] - 16:18, 41:3
**statement** [3] - 10:3, 36:8, 38:13
**statements** [3] - 8:9, 32:25, 37:24
**STATES** [2] - 1:1, 1:4
**States** [2] - 2:2, 2:4
**statistics** [2] - 38:14, 38:17
**status** [1] - 48:22
**statute** [3] - 8:15, 39:3, 43:18
**statute's** [1] - 10:1
**statutorily** [1] - 38:25
**stay** [1] - 18:12
**stenographically** [1] - 49:7
**step** [1] - 33:20
**Stewart** [1] - 42:10
**still** [2] - 23:23, 41:6
**stopped** [1] - 28:21
**strategize** [1] - 19:3
**Street** [1] - 1:24
**strength** [2] - 45:13, 47:10
**stress** [1] - 31:3
**strict** [1] - 23:3
**strikes** [1] - 46:10
**strong** [2] - 25:9, 27:5
**strongly** [1] - 32:6
**stuff** [1] - 14:25
**submit** [5] - 13:18, 21:20, 30:13, 41:13, 41:16
**submitted** [3] - 3:16, 15:19, 32:25
**success** [2] - 37:13, 37:16
**suffered** [1] - 31:22
**suggestion** [1] - 3:7

**suggests** [1] - 45:6
**sum** [1] - 21:2
**summaries** [1] - 8:9
**supervised** [1] - 23:2
**supervision** [1] - 23:4
**support** [3] - 22:8, 22:9, 25:2
**supported** [1] - 22:15
**supposed** [1] - 48:5
**surge** [1] - 2:21
**surrounding** [1] - 18:5

## T

**table** [1] - 42:3
**talks** [1] - 38:10
**target** [2] - 6:22, 25:23
**targeted** [7] - 8:6, 8:13, 23:24, 29:21, 30:15, 32:3, 46:5
**targeting** [4] - 27:19, 29:23, 29:25, 30:8
**task** [1] - 4:20
**team** [1] - 26:16
**tears** [1] - 26:11
**teenage** [5] - 8:6, 23:16, 25:18, 28:3, 30:8
**teenager** [1] - 47:13
**telephonic** [1] - 19:20
**temporary** [1] - 21:18
**tendency** [1] - 38:12
**tender** [2] - 8:6, 28:18
**term** [2] - 9:14
**terms** [2] - 6:4, 10:17
**terrifying** [1] - 35:1
**test** [1] - 19:9
**testified** [1] - 12:16
**testify** [2] - 9:12, 9:16
**testimony** [2] - 9:21, 10:7
**testing** [1] - 20:4
**Texas** [1] - 30:19
**text** [1] - 26:6
**THE** [66] - 1:1, 1:1, 2:7, 2:13, 3:10, 5:3, 5:21, 6:1, 6:7, 6:14, 6:25, 7:13, 7:16, 7:18, 7:20, 7:25, 8:14, 8:21, 9:4, 9:6, 10:22, 11:1, 11:5, 11:8, 11:11, 11:14, 11:17, 11:19, 11:23, 12:2, 12:5, 12:15, 12:21, 12:23, 13:1, 13:4, 13:23, 20:22, 20:25, 21:21, 27:12, 34:10, 34:15, 34:19, 35:9, 35:11, 36:2, 36:4, 36:7, 36:11, 36:23, 37:2, 37:5, 39:7, 39:11, 40:6, 40:11, 40:20,

41:15, 41:18, 48:1, 48:7, 48:12, 48:16, 48:19, 48:23
**themselves** [3] - 12:13, 29:1, 29:2
**therefore** [1] - 39:23
**they've** [1] - 8:8
**thinking** [1] - 3:5
**third** [3] - 24:1, 26:2, 28:9
**third-party** [1] - 28:9
**thorough** [1] - 20:17
**threat** [2] - 29:6, 33:23
**threatened** [1] - 11:12
**threatening** [1] - 29:7
**Three** [1] - 4:2
**three** [1] - 21:24
**ties** [4] - 7:5, 7:6, 42:21
**today** [13] - 10:8, 15:24, 16:5, 30:6, 34:21, 35:17, 38:10, 43:7, 43:10, 43:22, 44:2, 44:21, 48:9
**toggle** [1] - 8:4
**took** [1] - 28:7
**top** [2] - 20:1, 29:14
**totality** [1] - 47:10
**touch** [2] - 29:20, 33:5
**toward** [1] - 31:10
**trace** [1] - 27:23
**transcribed** [1] - 49:10
**transcript** [1] - 49:10
**trauma** [5] - 30:24, 31:22, 32:7, 32:15, 32:22
**traumatic** [1] - 43:16
**traumatize** [1] - 31:18
**traumatized** [2] - 28:19, 28:24, 28:25, 31:17
**travels** [1] - 14:10
**treatment** [3] - 15:8, 21:19
**tremendous** [1] - 20:13
**trial** [10] - 13:21, 15:5, 15:9, 15:11, 20:5, 24:5, 24:19, 24:24, 25:1, 40:8
**tried** [1] - 8:14
**troubled** [1] - 46:16
**true** [4] - 20:21, 30:3, 30:4, 44:25
**truism** [2] - 20:21, 21:2
**try** [10] - 14:21, 14:22, 15:16, 15:22, 17:3, 31:1, 34:22, 35:10, 38:20
**trying** [3] - 17:3, 31:22, 38:2
**turned** [1] - 29:4
**turning** [1] - 25:4, 27:19, 28:5
**turns** [1] - 26:22
**Twitter** [1] - 26:23

**two** [10] - 3:24, 22:17, 22:24, 23:6, 34:7, 39:9, 42:1, 44:20, 45:7, 48:16
**type** [19] - 10:7, 13:17, 14:9, 14:17, 14:18, 15:16, 16:4, 16:7, 16:22, 16:24, 18:10, 18:12, 18:15, 20:3, 20:11, 21:18, 38:12, 41:1
**types** [2] - 16:21, 17:7
**typical** [1] - 39:12

## U

**U.S** [3] - 1:23, 42:10, 42:11
**ultimate** [1] - 11:24
**ultimately** [3] - 5:21, 23:5, 42:15
**unable** [1] - 46:13
**unauthorized** [1] - 23:4
**unaware** [1] - 18:3
**under** [14] - 4:4, 4:14, 6:10, 7:14, 8:19, 28:8, 28:13, 33:1, 39:3, 40:4, 46:16, 46:25, 47:1, 47:8
**undue** [1] - 31:3
**UNITED** [2] - 1:1, 1:4
**United** [2] - 2:2, 2:4
**unless** [2] - 9:18, 36:24
**unsealed** [1] - 44:13
**unto** [2] - 13:11, 13:12
**up** [9] - 12:21, 13:21, 14:15, 14:22, 15:11, 21:2, 22:22, 34:18, 48:10
**US** [1] - 7:14
**USA** [1] - 49:7
**USC** [3] - 4:4, 5:10, 41:23
**user** [1] - 14:8

## V

**vaccinated** [2] - 2:17, 34:20
**variant** [1] - 2:22
**various** [1] - 17:14
**vast** [1] - 25:24
**vehemently** [1] - 33:14
**Venmo** [1] - 26:25
**versus** [1] - 2:2
**via** [1] - 2:24
**vicinity** [1] - 38:5
**victim** [17] - 7:3, 7:25, 8:24, 9:16, 10:23, 11:8, 28:21, 30:21, 31:9, 31:15, 31:17, 32:6, 32:13, 32:14, 32:18,

32:25, 34:13
  **VICTIM** [5] - 34:17, 34:21, 35:21, 36:10, 36:12
  **Victim** [14] - 7:15, 28:14, 30:22, 31:9, 31:15, 32:12, 32:21, 32:24, 33:10, 34:5, 34:14, 36:6, 36:9
  **victimize** [1] - 31:19
  **victims** [45] - 6:22, 7:22, 7:23, 8:5, 14:21, 19:14, 19:19, 23:24, 25:14, 25:24, 26:4, 28:4, 28:11, 28:15, 28:17, 28:18, 28:19, 28:23, 29:9, 29:15, 29:17, 29:18, 29:24, 30:5, 30:9, 31:11, 31:19, 31:21, 32:2, 32:8, 32:24, 33:15, 33:16, 34:14, 35:12, 37:21, 37:24, 43:16, 45:21, 46:5, 46:6, 47:14
  **victims'** [1] - 34:7
  **video** [1] - 26:10
  **videos** [9] - 26:3, 26:6, 26:11, 26:17, 26:21, 26:24, 27:3, 29:8
  **view** [2] - 38:9, 39:12
  **vigorously** [1] - 44:22
  **violated** [1] - 37:17
  **violates** [1] - 40:4
  **violence** [3] - 7:2, 25:6, 29:10
  **violent** [1] - 40:14
  **virtually** [1] - 43:24
  **vocal** [1] - 43:10
  **voice** [1] - 34:18
  **volume** [2] - 3:16, 28:1

# W

  **Walsh** [20] - 2:3, 2:11, 12:4, 13:11, 13:21, 14:5, 14:19, 15:5, 16:10, 18:7, 18:9, 18:19, 18:24, 19:1, 20:9, 20:18, 21:3, 21:17, 38:11, 49:8
  **WALSH** [1] - 1:6
  **Walsh's** [1] - 16:23
  **wants** [2] - 9:11, 9:16
  **warrant** [1] - 27:15
  **ways** [1] - 20:16
  **weapons** [1] - 14:9
  **wearing** [1] - 43:10
  **web** [1] - 35:3
  **websites** [1] - 16:21
  **Wednesday** [1] - 1:10
  **weight** [7] - 7:3, 25:8,

25:9, 27:4, 28:16, 39:16, 42:19
  **West** [1] - 1:24
  **whatsoever** [1] - 19:12
  **Whereof** [1] - 49:12
  **whole** [1] - 20:8
  **wide** [1] - 9:14
  **wifi** [2] - 22:22, 36:21
  **wifi-blocking** [1] - 22:22
  **willing** [10] - 16:6, 17:14, 17:16, 17:18, 17:21, 17:22, 18:7, 21:15, 31:13
  **witness** [2] - 9:11, 9:23
  **Witness** [1] - 49:12
  **wonderful** [1] - 22:18
  **word** [2] - 37:3, 40:21
  **words** [3] - 12:9, 13:22, 14:21
  **world** [1] - 14:10
  **worried** [1] - 31:24
  **worry** [3] - 32:8, 46:1, 46:18
  **worrying** [1] - 31:3
  **wrenching** [1] - 36:17
  **wrote** [4] - 6:3, 8:22, 32:25, 44:21

# Y

  **year** [4] - 3:22, 27:24, 33:12, 33:21
  **years** [7] - 8:6, 23:1, 27:8, 28:18, 33:15, 44:20, 45:7
  **yesterday** [1] - 48:5
  **young** [6] - 27:8, 30:9, 33:15, 34:24, 44:8, 46:20
  **younger** [1] - 45:19

# Z

  **Zajac** [3] - 1:23, 49:6, 49:17
  **Zoom** [1] - 2:24