cjf5.17.22

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Judson T. Mihok
Assistant United States Attorney
Judson.Mihok@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4903
MAIN: 410-209-4800
FAX: 410-962-3091

May 17, 2022

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

**12:38 pm, Jul 22 2022**

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

Mark E. Sobel
The Law Office of James Crawford
999 Corporate Boulevard, Suite 201
Linthicum, Maryland 21090
mark@jamescrawfordlaw.com

Re:   United States v. Matthew K. Walsh
      Criminal No. ELH 21 161

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Matthew K. Walsh (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **May 31, 2022**, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The Defendant admits that the Defendant is, in fact, guilty of this offense and will so advise the Court.

Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Count One (Production of Child Pornography)**

   a. That on or about the date(s) listed in the Indictment, in the District of Maryland, the Defendant employed, used, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

   b. The victim was a minor; and

  c. The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer.

## Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISO- NMENT | MAX IMPRISON -MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS- MENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2251(a) | 15 years mandatory minimum | 30 years | At least five years, up to life | $250,000 | $100 and $5,000 |

  a. **Prison:** If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b. **Supervised Release:** If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

  c. **Restitution:** The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664, as well as 18 U.S.C. § 2259(b)(2)(b) (mandatory restitution for victims of child sex abuse and child exploitation).

  d. **Special Assessments**: In addition to the mandatory $100 special assessment, pursuant to 18 U.S.C. § 3013, the Court may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

  e. **Payment:** If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  f. **Forfeiture:** The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  g. **Collection of Debts:** If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the

United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

       h.    **Sex Offender Registration:** The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crime to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

4.    The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

       a.    If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

       b.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

       c.    If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

       d.    The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

       e.    If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to

see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

### Group 1
### Count One– Production of Child Pornography

   a. This Office and the Defendant agree that the base offense level is **32**, pursuant to United States Sentencing Guidelines ("USSG") §2G2.1

  b.  This Office and the Defendant agree that there is a **two-level increase**, pursuant to USSG §2G2.1(b)(1)(B), because the victim had attained the age of twelve, but had not attained the age of sixteen years at the time of the offense.

  c.  This Office and the Defendant agree that there is a **two-level increase**, pursuant to USSG §2G2.1(b)(3), because the defendant knowingly engaged in distribution.

  d.  This Office and the Defendant agree that there is a **two-level increase**, pursuant to USSG §2G2.1(b)(6)(B)(ii), because the defendant knowingly misrepresented his identity to persuade, induce, entice, coerce, or facilitate the solicitation of a minor to engage in sexually explicit conduct.

  e.  This Office and the Defendant agree that there is a **two-level increase**, pursuant to USSG §3A1.1(b)(1), (2), because the Defendant knew or should have known that the offense involved a vulnerable victim.

  f.  The Subtotal for Group 1 is **40**.

### Groups 2-41
### Production of Child Pornography

  g.  Relevant Conduct: This Office and the Defendant further agree that pursuant to USSG §1B1.2(c), the Defendant's relevant conduct set forth in the stipulated factual basis involved at least forty separate victims, in violation of 18 U.S.C. § 2251, and that each offense involving each separate victim constitutes a separate group. Under USSG §3D1.4, the base offense is increased by **five levels**.

  h.  **Combined Offense Level**: Pursuant to USSG §3D1.2(d) and 3D1.4(c), the combined offense level is **45**.

  i.  **Acceptance of Responsibility**: This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

  j.  **Final Adjusted Offense Level**: Thus, the parties agree that, should the Defendant receive the anticipated three-level reduction for acceptance of responsibility, the final adjusted offense level will be **level 42**.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligation of the Parties

9.      At the time of sentencing, under Rule 11(c)(1)(A), this Office will move to dismiss any remaining counts in the Indictment, and advocate for a reasonable sentence considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## No Contact with Victims

10.     While incarcerated and throughout the entire term of his imprisonment, the Defendant will not make any contact, directly or indirectly, with any victim, as identified in the attached Statement of Facts or indicated in the discovery provided in the course of this case, unless approved by his supervising Probation Officer and the Court. The Defendant agrees to the entry of any Protective Order regarding any contact with any victim who may seek one. The Defendant specifically agrees that this provision shall continue following his release and will be part of any supervised release conditions ordered by the Court at the time of sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. The Defendant waives and agrees to waive any right to challenge any prosecution based on the statute of limitations or double jeopardy and knowingly and voluntarily agrees to toll the limitations period through the end of his incarceration and supervised release.

## Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

        b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment

Rev. August 2018

of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except this Office reserves the right to appeal any sentence below a statutory minimum.

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

12. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

   b. Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, all of which were seized from the Defendant's residence when a search warrant was executed on April 21, 2021:

    i. iPhone XR, S/N: DNPXN634KXKV;
    ii. Macbook Pro Laptop, S/N: C02PRA1FFVH5; and
    iii. Apple Smart Watch, Model: A2U93, S/N: FH7ZC4ZUMLTN

   c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

   d. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

   e. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

13. The Defendant agrees to the entry of a restitution order for the full amount of the Victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

14. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Restitution in Cases Involving the Sexual Exploitation of Children

15. Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Additional Special Assessment in Sex Crimes Cases

16. Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under 110 (relating to sexual exploitation and other abuse of children), the Defendant must also pay an additional special assessment of **$5,000**, unless the Defendant is indigent.

17. Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess-(1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5);

Rev. August 2018

(2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) **not more than $50,000** on any person convicted of a child pornography production offense.

### Defendant's Conduct Prior to Sentencing and Breach

18.     a.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

        b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those

set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

By: _____
Judson T. Mihok
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/13/22
Date

_____
Matthew K. Walsh

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7/19/22
Date

_____
Mark E. Sobel, Esq.

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Matthew K. WALSH ("WALSH") was born in 1997, and resided in Baltimore. From at least 2016 through 2021, WALSH created fictitious profiles where he purported to be a minor female to make contact with minor males between the ages of twelve and seventeen to induce them to produce sexually explicit images and videos to send to an individual they believed to be a minor female. Once WALSH obtained the sexually explicit images and videos, WALSH extorted the minor males into producing more sexually explicit images and videos at his instruction, to include masturbation and anal penetration, both digitally and with various objects. WALSH directed the minor males to send him the images and videos he directed them to produce, and that the images and videos needed to include their face, and threatened that if they failed to do so, WALSH would send the previously provided images and videos to the minor victims' friends, family, and classmates. In some of the communications, by text, email, and video, the minor victims are crying and begging with WALSH not to send the images and videos to their families and classmates, to leave them alone, and to not make them do more, but WALSH persisted with his threats and demands. WALSH targeted a number of minor males who lived in the area of Baltimore City and Baltimore County. WALSH attempted to, or successfully, exploited at least 70 Instagram and Snapchat users in an attempt to obtain further nude photos and videos. WALSH harassed some of the victims for years and obtained over hundreds of files depicting sexually explicit conduct from some of the victims. In total, WALSH obtained approximately 2000 images and videos depicting sexually explicit conduct of the various minor males.

In December 2019, a minor male, born in 2002, advised that after sending sexually explicit videos and images to the user of the Instagram account associated with the username "Linamarie6.5", and Snapchat account lslow6_5, the user requested the minor to send additional specific images and if he refused, the user would forward the initial sexually explicit files to the minor's friends and family.

In April 2020, another minor male, born in 2006, advised that after sending sexually explicit videos and images to the user of the Instagram account associated with the username "Linamarie6.7", and Snapchat account lslow6_5, the user requested the minor to send additional specific files and if he refused, the user would forward the initial sexually explicit files to the minor's friends and family.

1

Throughout the investigation, federal search warrants were executed on 17 Google accounts, 22 Twitter accounts, 4 Facebook accounts, 7 Instagram accounts, 6 Snap accounts, 3 Dropbox accounts, 3 TextNow accounts, a Kik account, an Apple account, and an Oath/Yahoo! account, all created and utilized by WALSH.

A review of the search warrant results provided by Snap for the account lslow6_5 revealed the following:

On January 18, 2020, and January 19, 2020, WALSH sent three messages to another user that read "If u don't send some stuff today I am exposing h"; "If I wanted to really expose u I would have done it weeks ago"; and "Send booty pics now."

On March 7, 2020, Minor Victim A told user WALSH (using Snap account lslow6_5) that he was 15 years old. On April 21, 2020, WALSH sent the following message to Minor Victim A: "Send like a hands free vid w the back camera flash showing u strip w ur face and jerk off and show ur ass too and make sure I can see all of u and use the flash." On September 29, 2020, WALSH sent two messages to Minor Victim A that read "So u can send videos today? I wont expose u if u do what I want and there is nothing blocking u and I can see ur face" and "I want long hands free vids of u stripping from full clothes w ur body and face. Jerking off. Showing ur ass. I dont want anything blocking u and I wanna see from ur knees up. Not like half ur body like u sent before. And at the end I want u to send a cum vid w ur face and lick ur cum off ur hand."

On April 16, 2020, WALSH (using Instagram account "Linamarie6.7") sent a message that read "Heyyy I'm so pissed off at u rn. Since u blocked me on snap, I'm going to expose u and send ur friends ur nudes with ur face and ass in them. Here they are." WALSH then sent an image depicting a naked male with his penis exposed. Minor Victim A responded "no stop." WALSH sent two more images of what appeared to be the same naked male with his penis exposed and a third image of an exposed buttocks. Minor Victim A sent a message response that he will add Linamarie6.7 on Snapchat. WALSH responded "Lslow6_5."

On March 9, 2020, WALSH sent the following message to Minor Victim B: "Unblock me or I'm going to expose u." WALSH then sent two images of a naked male with his penis exposed. WALSH sent the following three messages to Minor Victim B: "I'll send all ur friends ur nudes"; "Unless u send me what I want"; and "I will expose u." Minor Victim B responded "Please don't ruin me I beg"; "I can't get exposed bc I play basketball and football and I'm student body vp"; and "Ok first let me come clean, I'm fifteen and I'm not hard at all bc of all this stuff, can I do it tommorow or some other time because my mom needs my phone." Minor Victim B eventually sent a picture of an exposed buttocks as directed by WALSH.

On October 22, 2020, PayPal, Inc., submitted a Cybertipline Report which indicated: "Activity started 4/02/2019 and continued until 10/12/2020. Subject Matt WALSH has been receiving payments through Venmo and PayPal accounts for files/downloads of CSAM [Child Sex Abuse Material] material. These transactions say things like 'Bait Girls' (beloved to be short for jailbait girls, or a girl under 18 that has undergone puberty), vids/videos, files, the goods, master collection, collection, and similar notes that indicate CSAM is being sold by the subject. Unable to find the URL where these files are being sold or hosted, but it is clear from the notes that the account is being used to take payments for CSAM downloads."

A federal search warrant was executed on April 21, 2021 at WALSH's residence. WALSH was present during the execution of the residential search warrant and waived his *Miranda* rights and consented to an interview. WALSH admitted to "catfishing" which he explained was posing as another person online. WALSH was catfishing by pretending to be a female named "Lina" online. WALSH met minors on Instagram and asked them for sexually explicit files and the minors sent the files. WALSH stated he did this to at least 50 males. If the minors did not want to send the sexually explicit files anymore, WALSH told the minors that they either send him the files or WALSH would post the minors' nudes online or send them to the minors' families. WALSH extorted and blackmailed a majority of the minor males for additional sexually explicit files when the minors didn't want to send additional files. WALSH then saved the sexually explicit files into folders of fake names or a variation of the victim's real name in a cloud storage account. WALSH also uploaded the minor males' files to various twitter accounts and sold the sexually explicit files of the minors to others. WALSH made approximately $8000 from the sale of the files depicting minor male's engaged in sexually explicit conduct. WALSH did this to the minors because he was "bored and horny."

To date over 40 minor males have been positively identified as victims of WALSH's conduct. At least 30 victims' pictures and videos were sold and/or distributed to others by WALSH.

WALSH communicated with at least 50 different Twitter users interested in purchasing either individual files of CSAM, or WALSH's "collections" of CSAM. The "collections" contained over 100 different victims' files. In several messages located on Twitter, the Twitter users were aware of the ages of the individuals in the sexually explicit files, who WALSH indicated were as young as 14-years-old. Several Twitter users exchanged "tips" with WALSH on how to evade law enforcement and discussed methods for enticing and extorting victims' nude images and videos. WALSH was also a member of online groups which included other offenders who would post, sell, and trade CSAM.

Located within the sexually explicit files saved in WALSH's cloud account were videos of some of the minor males crying and begging WALSH to stop. One 12 year old victim stated

3

"Pls don't dude I'm only 12 dude ur making me cry please don't make me send pleaseeeee I'm begging u" and then sent a video of himself crying and a video of begging WALSH to stop. The 12 year old victim said that he is scared and does not want to be exposed. Another 15 year old victim also sent two videos of himself crying and begging WALSH to stop.

One victim told WALSH he was suicidal because of WALSH's extortion. WALSH continued to blackmail the victim anyway. The victim faked his suicide and friends posted on the victim's Instagram page that the victim killed himself. Another victim told WALSH that he was going to kill himself because of WALSH and that WALSH ruined his life. The victim sent a picture of a gun to WALSH and WALSH stated that he did not believe the victim.

<u>Materials in Interstate Commerce & Transportation of Images in Interstate Commerce:</u>

WALSH communicated with the forty (40) Minor Victims, and also produced, transferred, and/or stored the images and videos of the forty (40) Minor Victims using an iPhone XR, S/N: DNPXN634KXKV; a Macbook Pro Laptop, S/N: C02PRA1FFVH5; and an Apple Smart Watch, Model: A2U93, S/N: FH7ZC4ZUMLTN; all of which were manufactured outside of the United States. In addition, WALSH's communications with the Minor Victims traveled in and affected interstate commerce. And WALSH distributed the images and videos in interstate and foreign commerce. The depictions were therefore produced, possessed, and distributed using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

7/13/22
Date

Matthew K. WALSH

I am Mr. WALSH's attorney. I have carefully reviewed the statement of facts with him. He acknowledges it is true and correct and he knowingly and voluntarily agrees to it.

7/19/22
Date

Mark E. Sobel, Esq.

4