UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW K. WALSH | CASE NO:  ELH-21-161 |

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT
OF A SENTENCE OF 30 YEARS FOR MATTHEW K. WALSH**

For nearly five years, Matthew K. Walsh sexually exploited, and then habitually terrorized more than 50 children. By assuming the identity of a teenage girl, the defendant enticed at least 50 adolescent boys (some as young as 12) to send him explicit videos and photos. Once the boys were ensnared, the defendant manipulated them further by threatening to share their images with their families, friends, and communities. The defendant then coerced the victims to engage in additional explicit and degrading sex acts, including inserting various objects in their anus, masturbation, and insisting that the files show the victims' faces. He continued to torture the victims despite their repeated crying and pleading with him to leave them alone and not make them produce more sexually explicit and degrading files. The defendant victimized many of the same victims over the course of multiple years, obtaining hundreds of files from some of the same, tortured, children. During the nearly 5 years of his crimes, the defendant coerced victims to send him more than 2,000 images and videos of the victims engaging in sexually explicit conduct.

Not satisfied with the trauma he inflicted by exploiting and threatening the victims to continue so he could exploit them further, the defendant nevertheless sent some of the files he produced to the victims' friends and family. Over the course of the exploitation, the victims became aware that their files were being disseminated in their communities.

Although the defendant promised the victims not to disseminate their files if they continued

1

to produce as he demanded, the defendant was simultaneously selling the memorialization of his exploitation of the victims.  The defendant used Twitter to sell hundreds of files of the victims, and received more than $8,000.

The defendant's exploitation of scores of children shows that he presents a significant risk to the public.  The impact of the defendant's conduct on minors has been severe, and continues. For the reasons set forth below, the Court should impose a sentence of 30 years' imprisonment followed by a lifetime of supervised release.

I. **INTRODUCTION**

On July 22, 2022, the defendant pled guilty to Count One of the Indictment, which charges him with production of child pornography.  The sentencing hearing on this matter is scheduled for November 4, 2022.  United States Probation Officer Manisha Garner prepared the Presentence Report, which provides for a final offense level of 42, a criminal history category I, and an advisory guidelines of imprisonment for life.  The government agrees with the guideline calculation in the Pre-Sentence Report (PSR).

A. **Facts of the Offense**

The facts in this case are truly disturbing and reflect the danger that the defendant poses to the public, and to children in particular.  During the guilty plea hearing, the defendant, under oath, admitted that the following facts were true:

> Matthew K. WALSH ("WALSH") was born in 1997, and resided in Baltimore.  From at least 2016 through 2021, WALSH created fictitious profiles where he purported to be a minor female to make contact with minor males between the ages of twelve and seventeen to induce them to produce sexually explicit images and videos to send to an individual they believed to be a minor female.  Once WALSH obtained the sexually explicit images and videos, WALSH extorted the minor males into producing more sexually explicit images and videos at his instruction, to include masturbation and anal penetration, both digitally and with various objects.  WALSH directed the minor males to send him the images and videos he directed them to produce, and that the images and videos needed to

2

include their face, and threatened that if they failed to do so, WALSH would send the previously provided images and videos to the minor victims' friends, family, and classmates.  In some of the communications, by text, email, and video, the minor victims are crying and begging with WALSH not to send the images and videos to their families and classmates, to leave them alone, and to not make them do more, but WALSH persisted with his threats and demands.  WALSH targeted a number of minor males who lived in the area of Baltimore City and Baltimore County.  WALSH attempted to, or successfully, exploited at least 70 Instagram and Snapchat users in an attempt to obtain further nude photos and videos.  WALSH harassed some of the victims for years and obtained over hundreds of files depicting sexually explicit conduct from some of the victims. In total, WALSH obtained approximately 2000 images and videos depicting sexually explicit conduct of the various minor males.

In December 2019, a minor male, born in 2002, advised that after sending sexually explicit videos and images to the user of the Instagram account associated with the username "Linamarie6.5", and Snapchat account lslow6_5, the user requested the minor to send additional specific images and if he refused, the user would forward the initial sexually explicit files to the minor's friends and family.

In April 2020, another minor male, born in 2006, advised that after sending sexually explicit videos and images to the user of the Instagram account associated with the username "Linamarie6.7", and Snapchat account lslow6_5, the user requested the minor to send additional specific files and if he refused, the user would forward the initial sexually explicit files to the minor's friends and family.

Throughout the investigation, federal search warrants were executed on 17 Google accounts, 22 Twitter accounts, 4 Facebook accounts, 7 Instagram accounts, 6 Snap accounts, 3 Dropbox accounts, 3 TextNow accounts, a Kik account, an Apple account, and an Oath/Yahoo! account, all created and utilized by WALSH.

A review of the search warrant results provided by Snap for the account lslow6_5 revealed the following:

On January 18, 2020, and January 19, 2020, WALSH sent three messages to another user that read "If u don't send some stuff today I am exposing h"; "If I wanted to really expose u I would have done it weeks ago"; and "Send booty pics now."

On March 7, 2020, Minor Victim A told user WALSH (using Snap account lslow6_5) that he was 15 years old.  On April 21, 2020, WALSH sent the following message to Minor Victim A: "Send like a hands free vid w the back camera flash showing u strip w ur face and jerk off and show ur ass too and make sure I can see all of u and use the flash."  On September 29, 2020, WALSH sent two messages to Minor Victim A that read "So u can send videos today? I wont expose u if u do what I want and there is nothing blocking u and I can see ur face" and "I want long

3

hands free vids of u stripping from full clothes w ur body and face. Jerking off. Showing ur ass. I dont want anything blocking u and I wanna see from ur knees up. Not like half ur body like u sent before. And at the end I want u to send a cum vid w ur face and lick ur cum off ur hand."

On April 16, 2020, WALSH (using Instagram account "Linamarie6.7") sent a message that read "Heyyy I'm so pissed off at u rn. Since u blocked me on snap, I'm going to expose u and send ur friends ur nudes with ur face and ass in them. Here they are."  WALSH then sent an image depicting a naked male with his penis exposed.  Minor Victim A responded "no stop."  WALSH sent two more images of what appeared to be the same naked male with his penis exposed and a third image of an exposed buttocks.  Minor Victim A sent a message response that he will add Linamarie6.7 on Snapchat.  WALSH responded "Lslow6_5."

On March 9, 2020, WALSH sent the following message to Minor Victim B: "Unblock me or I'm going to expose u."  WALSH then sent two images of a naked male with his penis exposed. WALSH sent the following three messages to Minor Victim B: "I'll send all ur friends ur nudes"; "Unless u send me what I want"; and "I will expose u."  Minor Victim B responded "Please don't ruin me I beg"; "I can't get exposed bc I play basketball and football and I'm student body vp";  and "Ok first let me come clean, I'm fifteen and I'm not hard at all bc of all this stuff, can I do it tommorow or some other time because my mom needs my phone." Minor Victim B eventually sent a picture of an exposed buttocks as directed by WALSH.

On October 22, 2020, PayPal, Inc., submitted a Cybertipline Report which indicated: "Activity started 4/02/2019 and continued until 10/12/2020. Subject Matt WALSH has been receiving payments through Venmo and PayPal accounts for files/downloads of CSAM [Child Sex Abuse Material] material. These transactions say things like 'Bait Girls' (beloved to be short for jailbait girls, or a girl under 18 that has undergone puberty), vids/videos, files, the goods, master collection, collection, and similar notes that indicate CSAM is being sold by the subject. Unable to find the URL where these files are being sold or hosted, but it is clear from the notes that the account is being used to take payments for CSAM downloads."

A federal search warrant was executed on April 21, 2021 at WALSH's residence.  WALSH was present during the execution of the residential search warrant and waived his *Miranda* rights and consented to an interview.  WALSH admitted to "catfishing" which he explained was posing as another person online. WALSH was catfishing by pretending to be a female named "Lina" online. WALSH met minors on Instagram and asked them for sexually explicit files and the minors sent the files.  WALSH stated he did this to at least 50 males.  If the minors did not want to send the sexually explicit files anymore, WALSH told the minors that they either send him the files or WALSH would post the minors' nudes online or send them to the minors' families.  WALSH extorted and blackmailed a

4

majority of the minor males for additional sexually explicit files when the minors didn't want to send additional files. WALSH then saved the sexually explicit files into folders of fake names or a variation of the victim's real name in a cloud storage account. WALSH also uploaded the minor males' files to various twitter accounts and sold the sexually explicit files of the minors to others. WALSH made approximately $8000 from the sale of the files depicting minor male's engaged in sexually explicit conduct. WALSH did this to the minors because he was "bored and horny."

To date over 40 minor males have been positively identified as victims of WALSH's conduct. At least 30 victims' pictures and videos were sold and/or distributed to others by WALSH.

WALSH communicated with at least 50 different Twitter users interested in purchasing either individual files of CSAM, or WALSH's "collections" of CSAM. The "collections" contained over 100 different victims' files. In several messages located on Twitter, the Twitter users were aware of the ages of the individuals in the sexually explicit files, who WALSH indicated were as young as 14-years-old. Several Twitter users exchanged "tips" with WALSH on how to evade law enforcement and discussed methods for enticing and extorting victims' nude images and videos. WALSH was also a member of online groups which included other offenders who would post, sell, and trade CSAM.

Located within the sexually explicit files saved in WALSH's cloud account were videos of some of the minor males crying and begging WALSH to stop. One 12 year old victim stated "Pls don't dude I'm only 12 dude ur making me cry please don't make me send pleaseeeee I'm begging u" and then sent a video of himself crying and a video of begging WALSH to stop. The 12 year old victim said that he is scared and does not want to be exposed. Another 15 year old victim also sent two videos of himself crying and begging WALSH to stop.
One victim told WALSH he was suicidal because of WALSH's extortion. WALSH continued to blackmail the victim anyway. The victim faked his suicide and friends posted on the victim's Instagram page that the victim killed himself. Another victim told WALSH that he was going to kill himself because of WALSH and that WALSH ruined his life. The victim sent a picture of a gun to WALSH and WALSH stated that he did not believe the victim.

Materials in Interstate Commerce & Transportation of Images in Interstate Commerce:

WALSH communicated with the forty (40) Minor Victims, and also produced, transferred, and/or stored the images and videos of the forty (40) Minor Victims using an iPhone XR, S/N: DNPXN634KXKV; a Macbook Pro Laptop, S/N: C02PRA1FFVH5; and an Apple Smart Watch, Model: A2U93, S/N: FH7ZC4ZUMLTN; all of which were manufactured outside of the United States. In addition, WALSH's communications with the Minor Victims traveled in and

5

affected interstate commerce. And WALSH distributed the images and videos in interstate and foreign commerce. The depictions were therefore produced, possessed, and distributed using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

### B. Applicable Sentencing Guidelines Factors

In calculating the advisory guidelines range, Paragraphs 6-8 of the defendant's Plea Agreement are consistent with the analysis set forth in Part A of the Presentence Investigation Report ("PSR"). *See* PSR ¶¶ 28-51, ECF 55. The defendant does not receive any criminal history points because he has no prior convictions. Thus, based on the agreed advisory guidelines, the defendant's criminal history category is I, and his advisory sentencing guidelines range 360 months to life, PSR ¶ 88, but because the maximum sentencing for Count 1 is 30 years, the resulting guidelines sentence is 30 years' imprisonment.

## II. SECTION 3553(a) FACTORS

### A. The Nature and Circumstances of the Offense

The nature and circumstances of this offense weigh strongly in favor of a very lengthy sentence.

#### a. The Defendant Exploited Numerous Victims Over a Lengthy Period

First, the defendant's conviction did not result from an isolated incident, nor was his conduct confined to the distant past. The defendant sexually exploited numerous minor males, on multiple occasions throughout 2016 through 2021, and his conduct continued until April 21, 2021, the date the search warrant was executed at his residence. The defendant engaged in the serial sexual exploitation and extortion of at least 50 minors over the course of five years.

b.   <u>The Defendant Exploited Young Children Throughout the Country</u>

<u>Second</u>, the defendant used social media and other mobile communication tools to sexually exploit minors, some as young as 12, and, therefore, vulnerable; and his abhorrent conduct victimized children all over the United States.  From the confines of his home, the defendant literally victimized minors all over the country.[1]

c.   <u>The Defendant's Abuse of Certain Victims Was Particularly Mean</u>

<u>Third</u>, in addition to exploiting adolescent boys to create explicit images and videos, the defendant regularly threatened to publish the images and videos, a threat that caused significant and lasting emotional trauma to each child.  Not only did he threaten to publish these intimate images that he manipulated them to produce, but he followed through and widely disseminated the files, an unthinkable trauma to an adolescent child.

Examples of the threats by the defendant included:

- I have ur nudes and I'll expose u to ur friends and post ur nudes online. I'm pissed that u blocked me on snap.
- I have every vid u sent and I know guys from ur baseball team. I can send them ur nudes and expose u to people from us school.
- I'll expose u and send ur nudes to ur brother and all ur friends at <school> if u don't sent what I want
- Cuz u blocked me and pissed me off and I want more nudes and I'm horny. I promise I wont show anyone ur nudes if u send what I want
- strangers are gonna be masturbating to u online
- Either we sext again and u do what I want or I expose u
- U know my terms im not leaving u alone
- I can expose u right now while ur at school with all ur friends
- I'm gonna expose u if u don't response
- Uf friends are gonna see u naked
- I want u to send me whatever I want or I will expose u
- Don't think about removing me or blocking me cuz I will expose u
- I found ur friends Instagrams already
- Send the video or I'm exposing u

---

[1] The victims were in the following states:  California, Connecticut, Florida, Illinois, Indiana, Iowa, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, North Carolina, Ohio, Oregon, and Virginia.

7

- Send a hands free video on chat of u stripping and showing ur body and jerking off and ur booty too and ur hole. And show ur face.  Make it like 2 mins

When asked by many of the victims why he was doing this, the defendant made the following comments:

- ur hot and I'm horny
- Idk ur hot but then u made me mad and I couldn't stop thinking about u
- Because u blocked me and I got pissed and now I'm horny and want vids of u

When the victims threatened to call the police, the defendant would scare them into not reporting him by telling them that they received child pornography from him, which was a crime.

The victims regularly begged the defendant to stop, and expressed the pain he was inflicting, including the following messages:

- I don't feel comfortable doing this shit anymore I never did
- Your scaring me
- Please stop this
- Your forcing me to send you nudes
- I'm scared because you are forcing me to show my body to you
- please leave me alone and delete those
- just be merciful. Delete them
- Please just leave me alone. I'm a kid
- U could ruin my life over being horny
- Why please I'm begging u
- Please don't ruin me I beg
- This is a horrible thing to do
- I'm begging u please stop im only 12
- please don't make me do it again
- I've never been blackmailed before so I'm having a panic attack

Each of quotes above reflects a trapped and tortured adolescent, panicking and hiding in a room in their home, afraid to ask their families for help.

Not only was the defendant fully aware of the trauma he was causing, but he even kept mementos by saving the videos of young boys crying and begging him to stop.  When victim 2 blocked the defendant, the defendant quickly told him he was "going to expose u", "I'll send all ur friends ur nudes .. Unless u send me what I want".  After Victim 2 complied, the defendant

continued to threaten to expose him, and when Victim 2 pleaded, the defendant send the following response:

> Author linamarie6.7 (Instagram: 18314925887)
> Sent 2020-03-09 02:19:26 UTC
> Body Ok can u beg me not to expose u on the video please then? Then I will trust u and won't expose u

*See* Exhibit 1, and extract of 7 pages of chats between the defendant and Victim 2.

Victim 4, 12 years old, sent multiple pleading messages to the defendant, including ,"Pls don't dude I'm only 12 dude ur making me cry please don't make me send pleaseeeee I'm begging u".[2] Victim 4 also sent a video of himself begging the defendant to stop, and the defendant *saved the video*.[3] The defendant saved multiple similar videos of boys begging and crying.[4]

The Court is likely well aware of the link between minor extortion victims and self-harm, including suicide. The National Center for Missing and Exploited Children reports:

> As a result of sextortion, child victims commonly experienced a range of negative outcomes, including hopelessness, fear, anxiety and depression. Overall, it was indicated in 13% of CyberTipline sextortion reports that the child victim had experienced some type of negative outcome. Of those reports with some type of negative outcome, it was indicated that about 1 in 3 children (31%; 4% of all sextortion reports) had engaged in self-harm, threatened suicide or attempted suicide as a result of the victimization.[5]

Those same impacts are readily apparent here. During the interview of one victim, he told investigators that the defendant continued to extort him, even after he told the defendant he was

---

[2] Exhibit 2 is an 8-page excerpt of the chats between the defendant and Victim 4.

[3] Exhibits 3 and 4 are the videos that Victim 4 sent to the defendant that were saved on the defendant's devices.

[4] Exhibits 5 and 6 are videos that Victim 30, age 15, sent to the defendant that were saved on the defendant's devices.

[5] https://www.missingkids.org/content/dam/missingkids/pdfs/ncmec-analysis/sextortionfactsheet.pdf

suicidal as a result of the extortion. The victim then faked his suicide and had friends post on his Instagram page that the victim killed himself.

Victim 26, age 16, *told the defendant that he was going to kill himself* because of the defendant, who, he told the defendant, ruined his life.[6] The victim even sent a photo of a gun to the defendant:



Sent 2021-02-09 02:27:53 UTC
Body Gun is ready loaded

The defendant sent this reply:

Author mariel6.5 (Instagram: 44745326112)
Sent 2021-02-09 02:28:43 UTC
Body I can tell that is from google

According to the defendant, he continued to exploit victim after victim, year after year, even knowing the impact of his crime, because he was "bored," and because he was "horny." He told Dr. Israel that "he felt euphoric when he could control people as a result of his criminal activities." *See* PSR ¶ 72.

---

[6] Exhibit 7 is a 3-page excerpt of the chats between the defendant and Victim 26.

10

#### d.  The Defendant's Behavior Was Methodological and Willful

Fourth, the defendant's conduct was not attributable to youthful indiscretion or a perverted form of experimentation with online anonymity. The defendant's conduct was methodological and willful. A college graduate who grew up with financial security in a two-parent home and suffered no abuse, the defendant stalked children on social media platforms, which were designed for users to interact easily and share photos, videos, and their personal information with the public. The defendant then systematically used these applications' functions to persuade minors he found to communicate with him and to share personal information so he could exploit them. Knowing that he could not otherwise gain access to many of these children, the defendant hid his true identity by lying to the victims about his gender and his age.

#### e.  The Danger Posed by the defendant Is Not Diminished Online

Fifth, the defendant's behavior is not mitigated—as the defense may suggest—by the assertion that the defendant's conduct did not include any so-called "contact offense." The defendant coerced and enticed scores of adolescent boys to expose their genitals, masturbate, and insert objects into their anuses, to the defendant, who shared them with the multitudes on the internet. For these boys, the defendant's conduct most certainly resulted in physical abuse.

Nor is it true that the defendant is necessarily less dangerous to the public because he did not travel to meet any of his victims in person. An offender who exploits children in person can only be in one place at one time. An in-person offender can be surveilled and identified. Without infinite resources, an in-person offender can only travel so far, for so long. Online predators, by contrast, can sexually exploit children who live all over the country, like this defendant did. Online predators can abuse multiple children at once—as illustrated by this defendant. And online

11

predators can, like this defendant did for nearly five years, hide their conduct through lies about who they truly are.

In any event, the distinction between in-person offenders and online predators is beside the point. The harm suffered by each victim is the significant. As one expert has explained, "Even though they haven't been touched, the trauma level we see is as severe as hands-on offenses, because a lot of these kids don't know how to end what can go on, sometimes, for years. And they think it's not happening to anyone else." Benjamin Wittes et al., *Sextortion: Cybersecurity, Teenagers, and Remote Sexual Assault, Center for Technology Innovation at Brookings*, 23 (2016), available at https://www.brookings.edu/wp-content/uploads/2016/05/sextortion1-1.pdf.

### B. History and Characteristics of the defendant

The defendant's history and characteristics, too, support the government's requested sentence. *See* 18 U.S.C. § 3553(a)(1).

Insofar as the defendant may emphasize his lack of criminal history to minimize the danger he poses to the public; the observation overlooks the nature of the defendant's conduct. The defendant did not commit just one offense at a singular point in time. By his own admission, he sexually exploited at least 50 minors over the course of 5 years, on thousands of occasions.

Nor do the defendant's background and age mitigate his conduct. Unlike most federal sex offenders, the defendant had a relatively normal childhood. To be sure, having sexually exploited his victims starting at age 19 and continuing until he was approximately 24 years old, the defendant – age 25 at the time of his sentencing – is younger than most sex offenders convicted in the District of Maryland. But while the defendant was younger than most sex offenders, so, too, were some of the defendant's victims, some of whom were 12-years-old at the time they were sexually exploited by the defendant. And to the extent that a sex offender's risk of recidivism decreases as

offenders age, the defendant's relatively young age makes him more dangerous to the public—not less.

Finally, in evaluating the defendant's history and characteristics, the Court should not isolate other parts of the defendant's life from his conduct in this case. The defendant's exploitative and mean behavior is itself demonstrative of part of his character.

### C. Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment

The need for the sentence imposed to reflect the seriousness of the defendant's offenses, promote respect for the law, and provide just punishment likewise warrants the significant term of 30 years' imprisonment. See 18 U.S.C. § 3553(a)(2)(A).

The defendant's crimes were beyond serious. The defendant used social media to sexually exploit numerous minors located throughout the United States, and some as young as 12. The defendant's exploitation included enticing certain victims to participate in remote physical abuse involving sex acts. And, for his own sexual gratification, the defendant used threats to coerce victims to send explicit videos and images, and in many cases, disseminated the images and videos to inflict incalculable harm to coerce additional depictions. The defendant separately sold hundreds of the files he coerced for a profit. Few prosecutions involving the online exploitation of children are more serious than this one. Accordingly, a sentence of 30 years is appropriate and will promote respect for law.

The seriousness of the defendant's conduct is also underscored by its effect on his victims, and it is not difficult to imagine what those effects were. Children exploited in abuse materials like these "must live with the permanency, longevity, and circulation of such a record of their sexual victimization. This often creates lasting psychological damage to the child, including disruptions in sexual development, self-image, and developing trusting relationships with others

13

in the future." U.S. Dep't of Justice, *Nat'l Strategy for Child Exploitation Prevention and Interdiction: A Report to Congress*, 72 (2016), available at https://www.justice.gov/psc/file/842411/download.

The defendant's victimization of 50 victims includes all of the harms and consequences detailed above. In the impact statements submitted to the court, the pain of the victims and their families is patent. Victim 18, as many of the victims, is "embarrassed, ashamed, humiliated," and is suffering from depression. His parents blame themselves, wrongly, for the impact the defendant's crimes are having in their son's development and self-esteem. Victim 18 was 12 years old when the defendant, in his parents words, "destroyed his innocence." Like all of the victims, Victim 18 struggles with the knowledge that pictures and videos of his exploitation will be circulated on the internet for the rest of his life.

Similarly, the family of Victim 25 related that "there will never be a time that our son and his family will not be afraid of his images coming out in public," and that the daily stress has caused Victim 25, as well as his mother and father to attend therapy.

Each of the parents described the changes they observed to their young sons while the defendant terrorized them. A parent of Victim 28 described how her son's changes were "drastic," and how he suddenly became withdrawn from everything in his life. Victim 36 currently feels embarrassment, pain, and hatred toward the defendant, understandably. His parent described how they learned that, on Christmas day, the defendant forced their son to send a video of him masturbating, which explained Victim 36's unusual and withdrawn behavior that day. Like the other victims, multiple members of Victim 36's family have been to counseling. The anger expressed by many of the victims and their families, which they feel constantly, is both said, and understandable. It is also entirely of the defendant's making.

These letters demonstrate how the defendant's victimization has damaging effects on the families as well as the victims themselves. Many are suffering from anxiety and depression, and are in counseling. The sentence imposed by this Court should consider the impact of the defendant's crimes on the numerous victims and their families.

### D.  Need to Protect the Public from Further Crimes of the Defendant

The need to protect the public from further crimes of the defendant makes the imposition of the government's requested sentence critical. *See* 18 U.S.C. § 3553(a)(2)(C).

At the moment of his arrest in this case, the defendant represented a serious threat to minor boys everywhere. There is absolutely no reason to believe the defendant would have stopped exploiting minors online had he not been apprehended. By that time, the defendant had been engaged in the sexual exploitation of children on numerous occasions for 5 years, and his behavior was continuing at the time of his arrest.

Insofar as the risk of recidivism declines with age, the fact that the defendant is so young also makes him more—rather than less—dangerous to the public. That danger, moreover, is only exacerbated by the fact that the defendant has, despite his age, already established himself as a repeat and dangerous sex offender against children. Nor is the defendant's status as a repeat and dangerous sex offender surprising, given the nature of his appalling conduct. Research demonstrates that so-called "sextortionists," like the defendant, tend to be "prolific repeat players." *Wittes et al., Sextortion: Cybersecurity, Teenagers, and Remote Sexual Assault*, at 4. A 2016 analysis of "sextortion" cases in the United States revealed 25 cases involving at least 10 victims, 13 cases involving at least 20 victims, and 4 cases involving more than 100 victims. *See id*. ("The numbers get far worse if you consider prosecutorial estimates of the number of additional victims in each case, rather than the number of specifically identified victims. In 13 cases, prosecutors

estimated that there were more than 100 victims; in two, prosecutors estimated that there had been 'hundreds, if not thousands' of victims.").

Unless the defendant is sentenced to a term of imprisonment that results in his incarceration until he nears the age of 50, the defendant's risk of recidivism will not have materially diminished. Nor are conditions of supervised release an alternative to imprisonment that will adequately mitigate that risk.  It is critical that the Probation Office be authorized to install computer monitoring software and that the defendant be subject to unannounced computer searches.  But, given the "ready accessibility of smart phones and digital communication devices," it will be "all too easy" for the defendant to resume his sexual exploitation of children online.  *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020).

As Your Honor commented in a recent denial of a defendant's request for compassionate release:

> There are also serious concerns about the "frightening and high risk of recidivism" posed by sex offenders. *McKune v. Lile*, 536 U.S. 24, 34 (2002); *see Smith v. Doe*, 538 U.S. 84, 103 (2003).  Indeed, the Supreme Court has remarked on "the high rate of recidivism among convicted sex offenders and their dangerousness as a class," observing that when convicted sex offenders reenter society, "they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune*, 536 U.S. at 33; see also *Belleau v. Wall*, 811 F.3d 929, 934 (7th Cir. 2016) (discussing the rate of recidivism among sex offenders).

*United States v. Fischer*, No. CR ELH-14-0595, 2020 WL 2769986, at *6 (D. Md. May 27, 2020), *appeal dismissed*, 851 F. App'x 442 (4th Cir. 2021).

### E.  Need to Afford Adequate Deterrence to Criminal Conduct

Finally, just as the Court's sentence must protect the public from further crimes by this defendant, it is equally critical for the Court's sentence to afford adequate deterrence to similar criminal conduct by others.  *See* 18 U.S.C. § 3553(a)(2)(B).  A 30-year sentence would accomplish that result.

Online exploitation represents, as a general matter, an ever-expanding danger to children and families. Social media platforms and other technology have "made it easier for predators to get our kids faster and more efficiently," and make children even more vulnerable by "normalizing communication with strangers." Nellie Bowles & Michael H. Keller, *Video Games and Online Chats Are "Hunting Grounds" for Sexual Predators,"* N.Y. Times (Dec. 7, 2019), https://www.nytimes.com/interactive/2019/12/07/us/video-games-child-sex-abuse.html. However, the particular type of exploitation the defendant engaged in here, sextortion, is "by far the most significantly growing threat to children." *Nat'l Strategy for Child Exploitation Prevention and Interdiction* at 75. The defendant's behavior here, moreover, is consistent with this trend, because "[s]extortion cases tend to have more minor victims per offender than all other child sexual exploitation offenses." *Id*. The unfortunate reality is that "it is becoming common for investigations to reveal that a single sextortion offender has been communicating with hundreds of potential victims." *Id*.; *see also id*. (reporting that "[f]orensic examinations of sextortion offenders' digital media commonly reveal thousands of organized folders containing videos and documentation of their contact with countless minors, often around the world"). And sextortion is so pernicious and intractable because these offenders, like the defendant, take advantage of the fact that victims expose themselves to deep shame and embarrassment simply by reporting their victimization.

Accordingly, deterring sextortion is essential for the simple reason that the danger it poses to children is rising more quickly than any other threat.

### III. CONCLUSION

The defendant's conduct was intentional, pervasive, and serious. He lied about his identity, enticed the victims, and trapped them. His subsequent extortion was cruel and degrading. He

cared not at all for the intense pain and emotional suffering he was so plainly inflicted. Worse, he enjoyed it and memorialized it. Accordingly, for the foregoing reasons, the government respectfully requests that the Court impose a sentence of 30 years' imprisonment and supervised release for life.

                          Respectfully submitted,

                          Erek L. Barron
                          United States Attorney

By: _____
     Paul E. Budlow
     Assistant United States Attorney